JOHN CONTE *et al. vs.* THOMAS H. ROBERTS *et al.*

JUNE 22, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a petition for a writ of certiorari brought by Thomas H. Roberts, Joseph Scuncio and Benjamin P. Moulton, as members of the bureau of police and fire of the city of Providence, and is directed to the superior court for the counties of Providence and Bristol.   It seeks to have this court review the record of the superior court in the case of *Conte et al* v. *Roberts et al.,* Equity No. 13822, and to quash so much thereof as may be illegal, claiming that a justice of the latter court acted without or in excess of his proper jurisdiction in issuing against the respondents (petitioners here), *ex parte* upon the bill of complaint presented therein, the restraining order hereinafter set forth.

The bill of complaint, a copy of which is attached to this petition, was brought in the names of John Conte, Paul R. Picerne and Irving Epstein against these petitioners as respondents, but it is signed and sworn to only by John Conte.   It alleges, in substance, in vague general language and in terms of conclusions rather than specific facts, that (1) the complainants operated and leased machines to be used in games of skill; (2) the respondents have control of police to properly enforce the criminal statutes of the state and similar ordinances of the city; (3) the respondents have served notice on "divers firms, corporations, and individuals" now possessing "various machines" commonly called "pin games", that possession and operation of such machines violate general laws 1923, chapter 401, sec. 9, and have ordered the same removed under penalty of seizure and forfeiture thereof; (4) the purported order is wholly illegal for the reason that such machines are not, within the meaning of chapter 401, sec. 9, gambling devices, but are apparatus for testing the skill and dexterity of the operators and are used and adapted to no other purpose; (5) and that the order, if carried out by

respondents, will cause irremediable damage and harm to the complainants.

Solely upon such allegations the complainants based their prayers for citation and for the following restraining order:

> "And further to notify said respondents that said bill of complaint contains a prayer for a preliminary injunction to enjoin and restrain the respondents, their agents and servants, and all other persons, acting for them, and in their behalf from arresting or prosecuting any of the persons, firms and individuals, and corporations having certain pin games, more fully described in Paragraphs I and III of this bill of complaint, so called, in their possession and from interfering with, molesting or threatening, the complainants, their lessees or bailees, or from seizing or molesting, or interfering with the use of said machines and apparatus or permitting police officers or others in the service of said Bureau of Police and Fire from calling upon the lessees and bailees of the complainants, and the complainants themselves and warning them to remove said machines and apparatus from the places of business of complainants, their lessees and bailees and from revoking and cancelling any Sunday sales licenses, of the lessees and bailees of said complainants, and that said respondents be so restrained by an ex parte restraining order and a preliminary injunction pending the hearing of said court. . . .

> "And further to notify said respondents and each of them that in the meantime, and until further order of this Court, they, the said respondents, and each of them, are enjoined and restrained in accordance with the prayer as above set forth."

This restraining order, as prayed for, was granted *ex parte* on May 18, 1936, by a justice of the superior court, exercising equity jurisdiction, and the case was thereupon assigned to May 25 for hearing upon the preliminary in-

junction. On that date the respondents were ready for such hearing, but the case was continued by the court to May 27 at the request of the complainants. On the latter date, the respondents were again ready and pressed for hearing on the preliminary injunction, but the complainants meanwhile had filed a motion requesting the certification to this court of an alleged constitutional question raised only in and by the motion. The court, however, granted this motion and accordingly certified the constitutional question to this court for determination, which had the effect of preventing the immediate hearing in the superior court on the preliminary injunction. This certification was later dismissed by this court, upon the motion of the respondents, because the question was not germane at that time to the controlling issues raised by the bill.

Subsequently, and before the respondents could obtain a hearing upon the preliminary injunction, the complainants filed in the superior court a petition for a citation, requiring the respondents to appear there and show cause why they should not be held in contempt for alleged violation of the original restraining order because of alleged seizures of so-called pin-game machines. The respondents then brought this proceeding, claiming that the action of the justice in equity in granting, *ex parte,* the restraining order upon the bill of complaint presented, was without or clearly in excess of proper equity jurisdiction and that the record referred to, or as much thereof as may be found to be illegal, should be quashed.

The petition further prayed for an order staying the hearing in the superior court on the citation to the respondents for contempt, until this petition was decided. This latter order was issued by this court without prejudice to other proceedings which might be taken in the case in the superior court according to law. A citation on this petition was then ordered and issued to the complainants and the case was then placed on the calendar to determine whether, in the exercise of our discretion, we should permit the peti-

tion to be filed and the writ to issue. At that hearing, counsel for two of the original complainants, Picerne and Epstein, made known in open court that they had withdrawn as parties to the bill of complaint and otherwise from the case, leaving only the complainant Conte to prosecute the matters connected therewith.

The two questions raised and argued are first, whether *certiorari* is the proper remedy under the existing circumstances, to review the errors of law, if any, in this record; and second, whether the justice of the superior court acted without or in excess of proper equity jurisdiction in granting, *ex parte* upon this bill of complaint, the restraining order, *supra*.

It is true, as substantially urged by the complainant, that the petition for the writ of certiorari is addressed to our discretion; that certiorari will not issue ordinarily where there is another express remedy available to review the alleged errors of law; and usually will not lie to review interlocutory decisions. *Bennett* v. *Randall*, 28 R. I. 360; *Parker* v. *Superior Court*, 40 R. I. 214; *George E. Merewether, Inc.* v. *Equi*, 53 R. I. 148; *Bishop* v. *Superior Court*, 50 R. I. 13; *Cohen* v. *Superior Court*, 39 R. I. 272.

On the other hand, this court has recognized certiorari as a suitable form of writ through which to exercise its final revisory and supervisory powers to correct and to prevent errors and abuses. Accordingly this court has exercised its discretion in permitting certiorari to issue where the case presented exceptional circumstances and where probable and irreparable harm would result from delay in deciding the questions presented, and this even where the decision to be reviewed was interlocutory and where another remedy was ultimately available by appeal from a final decree.

In such cases this court has justified its review by certiorari because of the presence of exceptional circumstances, the probability of irreparable injury resulting from deferring a review until the ordinary remedy was available, and because in such circumstances it might fairly be said

that no other remedy, in the sense of an *adequate* remedy, had been expressly provided. *Hyde* v. *The Superior Court*, 28 R. I. 204; *Fainardi* v. *Dunn*, 46 R. I. 344; *Union Mortgage Co.* v. *Rocheleau*, 51 R. I. 345; *Mackenzie & Shea* v. *Rhode Island Hospital Trust Co.*, 45 R. I. 407.

In the instant case the restraining order in question is plainly interlocutory. Therefore the ordinary procedure in equity by appeal under the statute would not be available at once to the respondents, since there had been no order or decree entered *upon hearing*, G. L. 1923, chap. 339, sec. 34. Efforts of the respondents to obtain such a hearing had been, for one reason or another unsuccessful. A considerable delay would probably ensue before a hearing could be obtained on a pertinent phase of the question so as to enter a decree from which an appeal would lie. Meanwhile irreparable injury to the respondents and to the public would result.

It is also to be noted that the respondents were not sued nor restrained, nor have they sought this writ of certiorari, merely as individuals but rather as designated police officials, who are charged with the duty and responsibility of enforcing the criminal statutes of the state and ordinances of the city. The questions presented, therefore, are affected with a distinct public interest involving a public policy of proper enforcement of the criminal statutes. The restraining order is so sweeping in its terms and in its effects that any officers charged with a similar duty would be placed under an unreasonable restraint, with irreparable injury to the public welfare, if they were prevented from enforcing the criminal laws of the state until the issues were finally determined in such a manner that a review of the decree by appeal would be available to the respondents, assuming always that equity had jurisdiction at all.

In our opinion, therefore, there are clearly exceptional circumstances presented in the record and travel of this case which warrant the exercise of our discretion in permitting, by this proceeding, a review of this interlocutory

decision of the superior court. See *Hyde* v. *The Superior Court, supra,* and *Union Mortgage Co.* v. *Rocheleau, supra,* and cases cited.

The second question presented is whether the justice of the superior court acted without or in excess of proper equity jurisdiction in issuing the restraining order in question. General laws 1923, chapter 401, is admittedly a criminal statute designed to suppress offenses against public policy, and sec. 9 thereof relates to devices, implements or apparatus to be used in gambling or playing at any game of chance for money or other valuable consideration. The duty and authority of the respondents to lawfully enforce this statute in Providence is nowhere challenged here.

If the criminal statute to be enforced is valid and the proposed enforcement is according to law, the fact that the enforcement thereof would incidentally, though materially, injure complainant's business or property constitutes no ground for equitable interference. It is well established that equity, as a general rule, has no jurisdiction or power to interfere by injunction with the proper administration and enforcement of a valid criminal statute. Certain distinctions, or so-called exceptions, from this general rule are perhaps now universally recognized; but it is only where the statute or ordinance is unconstitutional or otherwise void, and where the attempt to enforce such a void statute or ordinance would clearly result in a direct and irreparable injury to property or property rights, that an injunction will issue to restrain the enforcement thereof. Both of these elements are indispensable, and the latter element is not present where it appears that the injury or loss to complainant's business or rights of property would be only such as would incidentally flow from the arrest and prosecution thereunder. See 32 C. J. 279-281, §§443, 444.

It has been held that a suit in equity cannot be maintained by one engaged in business to enjoin police officials from committing an alleged apprehended unlawful interference with such business. *Shuman* v. *Gilbert,* 229 Mass.

225. In that case the court said, at page 230: "Simply that one is in business and may be injured in respect of his business by prosecution for an alleged crime, is no sufficient reason for asking a court of equity to ascertain in advance whether the business as conducted is in violation of a penal statute."

To hold otherwise than according to the general rule and its recognized distinctions, *supra,* in the case of a police officer proceeding under a valid law of the state, and whose error, if any, lies in wrongfully construing the statute so as to include the complainant's property, "would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to punish the parties if found guilty." *Arbuckle* v. *Blackburn,* 113 Fed. 616, 625, 51 C. C. A. 122. Speaking further in that case, concerning the effect of criminal prosecution under a valid statute, upon property of the accused, but allegedly used for unlawful purposes, the court, at page 625, said: "Such prosecution may destroy its rental value and prevent its sale, yet a court of equity could not usurp the right of trial which both the state and the accused have in a common-law court before a jury. Every citizen must submit to such accusations, if lawfully made, looking to the vindication of an acquittal and such remedies as the law affords for the recovery of damages."

In *Mills Novelty Co.* v. *Sunderman,* 266 N. Y. 32, 193 N. E. 541, the police had seized certain "coin-operated automatic merchandise vending machines," and so prevented delivery to or removal by the plaintiff from the state; whereupon the latter sought relief in equity by injunction against the police from intereference with such delivery and transportation; an injunction *pendente lite* was obtained, and the case, after hearing, finally reached the court of appeals upon certified questions. That court then said: "We think the complaint is insufficient to state a cause of action for an injunction. No facts are pleaded

tending to show an irreparable injury, actual or threatened, or that plaintiff is without an adequate remedy at law. On the contrary, the allegations disclose merely a dispute about a possessory right in specific chattels, which could be readily and adequately settled by an action in replevin or for a conversion. . . .

"A court of equity, even where property interests are incidentally affected, will not ordinarily interfere with criminal processes, unless there would be irreparable injury and the sole question involved is one of law. . . . Neither condition is present here."

A case involving somewhat similar machines and the same questions as are presented in the instant case was decided in *Tonahill* v. *Molony, Supt. of Police,* 156 La. 753. That case discusses the facts and law at length, and the court approved and applied the general rule, *supra,* saying among other things, at page 757: "It is not necessary to cite authority for the proposition that the equity jurisdiction of the courts does not extend to the granting of an injunction to prevent an enforcement of a valid criminal statute by a police officer."

Again in *Dell Publishing Co.* v. *Beggans,* 110 N. J. Eq. 72, at 74, where similar proceedings were attempted to enjoin police officers from enforcing a criminal statute against possession and sale of obscene literature, the court stated with approval the general rule, *supra,* and also assumed for its decision the validity of the exceptions above referred to, and refused to grant the injunction. In dealing with the question of warning notice given by the police to the complainant, similar to the facts which form the basis of the bill of complaint before us, the vice-chancellor, at page 75, said: "Complainant contends that any action by the police in advance of the commission of a crime (not amounting to a breach of the peace) is unlawful; that their only function is to wait until a crime has been accomplished and then to arrest and prosecute. I do not think this sound. In my opinion the police have a preventive func-

tion; if they have reason to believe a crime is contemplated, they may properly give warning that if the crime is committed they will proceed against the wrong-doer. There may be circumstances in which it is their duty to go further in order to prevent crime."

No Rhode Island case exactly in point has been called to our attention. The nearest approach seems to be the case of *State* v. *Conragan*, 54 R. I. 256, where this court held that ordinarily the equity court had no criminal jurisdiction and seemingly adopts the principle underlying the general rule as stated, *supra*.

Numerous other cases have been cited to us, including several which have been decided by the United States supreme court, and all of them amply support the petitioners' contentions.

In the instant case, an examination of the bill of complaint, *supra*, will demonstrate that no exceptional circumstances are shown which would warrant a court of equity in interfering by injuction with police officials in the reasonable and proper enforcement of the pertinent criminal statute and the discharge of their duties. It will be noted that the bill contains no allegation that G. L. 1923, chap. 401 is unconstitutional or void; nor any facts to sufficiently identify the complainant's property or property rights which are claimed to be threatened. On the contrary, it alleges specifically that the respondents have a duty to enforce the statute in question, thereby in effect admitting its validity; and it merely alleges the giving of a notice by the police to "divers persons" (not to the complainants), who may possess and use certain machines in violation of the statute, that such continued unlawful possession and use will subject them to seizure and forfeiture. This procedure for forfeiture is prescribed by statute and is therefore not unlawful, but rather *according to law*. No arrest or actual seizure is alleged; no charge of any actual molesting of or interference with any person or any lawful business is made, and no facts supporting such

a charge, are stated; there are no facts alleged to show that the officers under the respondents had engaged in unreasonable and unjustifiable conduct amounting to a continuing trespass.

The machines are not described, identified, or located, any more than are the lessees and bailees thereof, who were benefited by the blanket restraining order against the police. The statement of a mere conclusion by the complainant, unsupported by facts, that such undescribed and unlocated machines are not gambling machines under chap. 401, sec. 9, is at most the ordinary averment which might be made by anybody engaged in business, who is undertaking a branch of commercial adventure which is believed, by the officer charged with enforcing the law, to be in contravention of some penal statute confessedly valid in itself. See *Sherman* v. *Gilbert, supra,* where a similar pleading was held insufficient to justify the exercise of equity jurisdiction. Moreover, the bill presumes to state not facts, but a conclusion which is the very issue to be determined in a criminal prosecution against the accused for violation of chapter 401, or in an action in *rem,* after seizure, upon a warrant for forfeiture under the statute in such case made and provided.

It is clear to us that these last-named procedures offered an adequate remedy to the complainant within the law court exercising criminal jurisdiction. But, assuming that equity ordinarily did have jurisdiction, the bill is too vague and entirely insufficient to support such a drastic restraining order, *supra,* against arrest, molesting, interfering, *etc.,* when none such was actually charged in the bill. However, we are of the opinion that, applying the general rule above set forth to the facts before us, and following the overwhelming weight of authority, equity was without jurisdiction at all to entertain this bill on the facts as stated therein, or to enter the restraining order in question, *supra.*

The complainant argues to the contrary and has cited to us several cases from which he extracts certain language

that seems, at first glance, favorable to his contention. An examination of these cases, however, will show that they rather conform to the general rule and recognized distinctions above referred to. These cases invariably deal with attempts to prosecute under allegedly *unconstitutional* statutes, or under ordinances which were allegedly *ultra vires* or otherwise *illegal*, and all apparently contain a more definite statement of facts to show legitimate property rights which were invaded, resulting in alleged immediate and irreparable injury to the complainant.

For example, the complainant relies on the case of *Hagan* v. *McAdoo,* 113 App. Div. (N. Y.) 506, as perhaps the strongest in his favor. In that case there was no crime stated nor evidence of any before the court. The police, merely on "suspicion" and without a scintilla of evidence to support the suspicion, and without any charge against the complainant, for five weeks kept entering the owner's place of business without any warrant and so conducted themselves as to interfere with a legitimate business by molesting its customers. On this situation the court rightly held that the police were then not engaged in any way in the administration or enforcement of the criminal law and that their conduct was a continuing, unlawful trespass with no justification; adding at page 508, in addition to the language quoted by counsel for complainant: "The trite rule that a court of equity will not interpose to prevent arrests, or the administration of the criminal law, is, as it has always been, undisputed by bench or bar. But it has no application to a case like this." The distinction between the facts of that case and those of the instant case appears too obvious to require any further discussion. Similar distinctions are found in the other cases cited.

The complainant apparently contends that the petitioners are not entitled to be heard on any phase of the case proper, because they stand charged with contempt of the superior court's restraining order. For this contention he relies on the case of *Hazard* v. *Durant,* 11 R. I. 195, but

that case is clearly distinguishable from the case before us. In the *Hazard* case, only individuals and merely individual rights were involved, while the instant case involves a definite public policy and the rights of the public; in the former case the court had jurisdiction of the subject-matter and the parties, while in the instant case, as we have decided, the equity court was without jurisdiction; moreover, in that case the accused had been found guilty of contempt after a hearing thereon, whereas here no hearing on the citation for contempt has been held, nor has any finding been made that the respondents were actually in contempt. Moreover the court, as we read that opinion, did not shut the door completely to all further consideration of the former case, notwithstanding that the accused was found guilty of contempt and had failed to purge himself thereof. Nothing in the decision or in the reasoning of the opinion in the *Hazard* case precludes our hearing the case of the petitioners, as presented by these proceedings, so far at least as the bill of complaint and the restraining order is concerned.

While the question of contempt is not strictly before us, the petitioners, through their counsel, have frankly disavowed in open court all intent to treat contemptuously the superior court or its order. In view of this declaration and the vagueness and deficiencies of the bill and the restraining order, and in view of our opinion that the superior court acted without jurisdiction, it might be appropriate for us to dispose of all relevant matters at this time. There is precedent for so doing, following the authority of *Tonahill* v. *Molony, Supt. of Police, supra,* because it seems to us that, under all the circumstances, the petitioners are not willfully in contempt of the superior court.

However, due respect of all the parties and counsel for the dignity and authority of the superior court and its orders will be better served, in our opinion, if the petitioners and counsel will make to the superior court justice, who issued the order, the same frank disavowal of intention to

act contemptuously toward the restraining order as they have made before us, so that he, rather than we, will finally quash or dismiss the citation for contempt. Had counsel in the beginning given to him all the facts and information which they have presented to us, we think that the justice would have come to the same conclusion as we have reached and would have recalled or dismissed the citation, dismissed the bill of complaint, and dissolved the restraining order.

As the records of the superior court, pertinent to the questions in the case before us, and the original papers therein have been produced before this court as upon a return to a writ of *certiorari* duly issued, the court will determine the questions involved accordingly.

For the reasons stated, the prayer of the petition to quash the citation for contempt is not, at this time, granted. The prayer of the petition for relief otherwise is granted, the record of the bill of complaint and the restraining order in the case of *Conte et al.* v. *Roberts et al., Equity No. 13822,* is quashed. Further proceedings in the superior court with reference to the citation for contempt, if taken, should be in accordance with this opinion.

The records and papers of the superior court are ordered sent back to that court.

*James H. Kiernan, Martin F. McGuire,* for Conte.

*Donald O. Burke,* Prosecutor for Bureau of Police & Fire of City of Providence.

*John P. Hartigan,* Attorney General, for Roberts et al.

