397 A.2d 1317.

EASTERN COMMUNICATIONS CORPORATION
*vs.* EDWARD W. BURMAN *et al.*

FEBRUARY 20, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.   This is a public utility rate case that comes to us on a petition by Eastern Communications Corporation (Eastern) for a writ of certiorari.

On November 12, 1975, the New England Telephone and Telegraph Company (NET) filed with the Public Utilities Commission (PUC) a revision to its tariff seeking to introduce a new product line of electronic customer switching systems known as Dimension PBX Service (PBX).[1] The tariff describes two payment plans for Dimension PBX customers — Rate Plans I and II.

Rate Plan I is a "two-tier" payment plan which is novel in the public utility field in this state. The first tier requires the customer to select a period of 36, 60, 84 or 120 months during which he will pay a fixed monthly charge that is designed to

---

[1]PBX is an acronym for private branch exchange.

permit recovery by NET of its capital investment costs for the customer's system. Consequently, that charge will vary with the payment period selected. The second tier is a variable monthly charge that is paid by the customer during the first tier period and for as long thereafter as the system is in service; it is designed to cover on-going operating expenses.

Rate Plan II reflects the customary utility company pricing scheme under which the customer will pay a variable monthly charge for as long as he uses the PBX system.

Hearings before the commission began on January 20, 1976. They were continued on seven additional hearing dates and concluded on June 8, 1976. At the first hearing, Eastern, a competing marketer of telecommunication systems, was allowed to intervene. It opposed NET's proposed Rate Plan I on the grounds that it constituted an illegal restraint of competition by a regulated utility company, was inherently discriminatory, and should be rejected as illegal from a regulatory point of view. Eastern also argued that the rates and charges proposed by NET were so unreasonably low that the would require cross-subsidization by general rate payers.

On September 13, 1976, the PUC rendered a report and order rejecting Eastern's contentions and approving in substance the proposed tariff. That approval, however, was conditioned upon NET's filing a revised tariff incorporating certain modifications required by the PUC order. In compliance with that directive, NET filed a revised tariff on October 5, 1976, and on November 4, 1976, the PUC issued a second order stating that the revised tariff satisfied the conditions imposed by its original order.

Eastern was not notified that NET had filed a revised tariff or that the tariff had been approved by the PUC. Allegedly, it did not learn of that filing or of the second order until its counsel contacted the PUC on November 26, 1976. Once it received that information, however, it acted promptly and, 3 days later, petitioned this court for leave to file an appeal out of time. Still later, while that petition was pending, it also petitioned us under G.L. 1956 (1977 Reenactment)

§39-5-1[2] to issue a writ of certiorari to review the legality of the November 4, 1976 PUC order. The NET moved to intervene and opposed the granting of certiorari. We treated NET's motion to intervene as a motion to appear as an amicus curiae and granted it; denied Eastern's motion to file a late appeal; and, treating Eastern's petition for statutory certiorari as if it were a petition for common-law certiorari, granted it without prejudice to the parties' right to argue whether the writ was improvidently issued. *In re Tariff Made by the New England Telephone & Telegraph Co.*, 117 R.I. 978, 368 A.2d 586 (1977),

In support of its position that the writ was providently issued, Eastern now contends that the original PUC order of September 13, 1976, directing NET to file a revised tariff, was interlocutory and therefore not subject to review; that its second order of November 4, 1976, approving that tariff, was the final order in the proceeding; that under §42-35-12 it was entitled to notice of that order; and that failure to provide that notice deprived it of an opportunity to seek review thereof pursuant to §39-5-1. It further argues that in the circumstances we should be guided by *Hester* v. *Timothy*, 108 R.I. 376 383, 275 A.2d 637, 641 (1971), where we said that common-law certiorari "may be used to review a case wherein appears that a person's right of appeal has been lost because of illness or some accident for which he was not responsible."

---

[2]General Laws 1956 (1977 Reenactment) §39-5-1 provides:

"Any person aggrieved by a decision or order of the commission may, *within seven (7) days from the date of such decision or order, petition the supreme court for a writ of certiorari to review* the legality and reasonableness of said decision or order. The petition for a writ of certiorari shall fully set forth the specific reasons for which it is claimed that the decision or order is unlawful or unreasonable. Chapter 35 of title 42 shall not be applicable to appeals from the commission. The procedure established by this chapter shall constitute the exclusive remedy for persons and companies aggrieved by any order or judgment of the commission; provided, however, any person aggrieved by a final decision or order of the administrator may appeal therefrom to the superior court pursuant to the provisions of §42-35-15." *(Emphasis added).*

The obvious flaw in Eastern's approach is that it challenges the November 4, 1976 PUC order, whereas in fact its true target is not that order, but the initial order of September 13, 1976, where the PUC approved the concept of the two-tier payment plan and specified what modifications to NET's original tariff would be required in order to obtain unqualified approval of that order. The second order, in effect, was nothing more than an administrative recognition that NET's revised tariff effectuated the original September 13, 1976 order. Although better practice might have suggested that Eastern be notified of that order, such notification was not required. *See Town of Charlestown* v. *Kennelly,* 80 R.I. 148, 153, 93 A.2d 728, 731 (1953).

Moreover, that Eastern is attempting to gain entry to this court through the backdoor is demonstrated by its failure, even at this late date, to suggest either that the modifications appearing in NET's revised tariff were not in conformity with those required by the original order, or that the second order is incompatible with the original order. Had the thrust of Eastern's argument pointed in that direction, it could have made a strong argument that the failure to notify it of the revised filing and of the second order rendered inadequate the otherwise adequate remedy provided by §39-5-1 and that it was therefore entitled to seek a writ of common-law certiorari.

Eastern's target, however, is the original PUC order. It received notice of that order but did not avail itself of the adequate remedy provided by §39-5-1 for its review. It has failed to show the existence of any unusual hardship or exceptional circumstances which interfered with the exercise of that remedy. In these circumstances, common-law certiorari does not lie. *See Barletta* v. *Kilvert,* 111 R.I. 485, 487, 304 A.2d 353 354-55 (1973); *Rogers* v. *Rogers,* 98 R.I. 263, 266, 201 A.2d 140, 142 (1964); *Conte* v. *Roberts,* 58 R.I. 353, 358, 192 A. 814, 817 (1937).

The petition for certiorari is denied, the writ improvidently issued is quashed, and the record certified to

this court is remitted to the Public Utilities Commission with our decision endorsed thereon.

*Schechter, Abrams & Verri, David A. Schechter, Cohn and Marks, Bruce P. Saypol,* for Appellate-Intervenor, Eastern Communications Corporation.

*Tillinghast, Collins & Graham, Peter J. McGinn, Robert D. Bruce, Christopher M. Bennett,* for New England Telephone and Telegraph Company, Amicus Curiae.