[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the prayer for preliminary injunction contained in Plaintiffs' Amended Verified Complaint. Plaintiffs are various corporations which operate businesses in the Town of New Shoreham (hereinafter "Town") relative to the rental and/or sale of what the complaint characterizes as "mopeds." The Defendants are Beverly Najarian, in her capacity as Director of the Rhode Island Department of Administration (hereinafter "Director"), and the Town of New Shoreham.
Vehicles, statutorily identified as "motorized bicycles" have historically been leased during the Block Island tourist season to persons who have motor vehicle operator's licenses, but do not have licenses specially endorsed for the operation of motorcycles or motor scooters. The rental of these vehicles has been subject to regulation by the Town in accordance with the statutes enacted by the General Assembly authorizing such regulation by the Town.See G.L. 1956 §§ 31-19.3-1, et seq. Such regulation includes limitations on the maximum number of licenses which may be granted to businesses renting motorized bicycles, the hours during which such rentals may take place, the maximum number of vehicles which each licensee may rent, and required annual inspections of such vehicles. In addition, the statute and regulations require that the persons to whom "motorized bicycles" are rented shall either have a valid license "issued under the provisions of § 31-10-1, or a similar license issued by a state other than Rhode Island." Section 31-19.3-5. The definitions of "motorized bicycles" and "motorized tricycles" to which the statute and regulations apply are defined in § 311-3(1) and (n).See § 31-19-3.2.
Section 31-10.1-1 requires that any resident of Rhode Island, in order to drive any "motorcycle, motor scooter, or motor-driven cycle," must obtain a special license for the operation of these vehicles. Such licensure requires applicants to attend special classes, and pass a written test and road test that is different than that required to operate other motor vehicles. Operators of "motorized bicycles," however, as that term is defined in §31-1-3(1), do not need such special licensure.
The disagreement which forms the basis for the present controversy relates to the interpretation of the term "motorized bicycle" as contained in the statute. Although all parties have come to refer to the fleet of two-wheeled vehicles offered for rent on the island as "mopeds," no such nomenclature is used in the statute. The Department of Administration, which currently has jurisdiction over the Division of Motor Vehicles (hereinafter "DMV") pursuant to §§ 31-2-1 et seq., has recently issued a "clarification" of its interpretation of the applicable statutes, requiring that the operators of the type of leased two-wheeled vehicles currently in the Block Island rental fleets have a motorcycle license or endorsement to operate such a vehicle. The Plaintiffs, as lessors of such vehicles, state that the vast majority of their customers, typically tourists on the island, have standard motor vehicle licenses, but do not have motorcycle licenses or endorsements. Accordingly, the Plaintiffs believe that the enforcement of such a restriction will result in the need to shut down their existing businesses, or necessitate the capital expense of replacing the existing fleets with vehicles of inferior design and safety.
Plaintiffs, in the Amended Verified Complaint, allege in Count I that the State's failure to interpret the statute in accordance with its "plain meaning" is unlawful conduct, and that this Court should intervene by way of injunctive and declaratory relief, as well as compensatory damages. Additional counts allege claims under 42 U.S.C. § 1983 for regulatory taking without just compensation (Count II); violation of the due process and equal protection clauses of the United States Constitution (Count III); violation of the equal protection clause of the Rhode Island Constitution (Count IV); and a claim that is best characterized as one for equitable estoppel, alleging that the State's conduct in permitting the registration of these vehicles caused the Plaintiffs to rely, to their detriment, on a statutory interpretation contrary to the present interpretation, and that the enforcement of the current interpretation should be enjoined (Count V). As to each count, Plaintiffs seek declaratory and injunctive relief, as well as compensatory damages.
Initially, the State, joined by the Town, raises procedural and jurisdictional questions which the Court must address before consideration of the substance of the claims or the propriety of issuing a preliminary injunction. The Defendants raise the following issues:
 1. the Court lacks subject matter jurisdiction, in that this matter must be considered a contested case under the Administrative Procedures Act, and accordingly exclusive jurisdiction lies in the District Court pursuant to G.L. 1956 § 42-36-8;
 2. the Plaintiffs have failed to exhaust their administrative remedies;
 3. the Plaintiffs lack standing;
 4. equity cannot be used to enjoin the enforcement of penal laws; and
 5. the issues presented are not ripe for adjudication.
The Court, preliminarily, will address these issues.
I. SUBJECT MATTER JURISDICTION AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES
Defendants have accurately observed that the Division of Motor Vehicles, as created under Title 31, Chapter 2 of the General Laws, is a state administrative agency, having jurisdiction over the issuance, suspension or revocation of motor vehicle registrations and drivers licenses. Sections 31-2-1, et seq. Pursuant to § 31-2-19, appeals from any order of the Administrator lie within the jurisdiction of the District Court. In addition, notwithstanding the exemption from certain aspects of the Administrative Procedures Act pursuant to §42-35-18(c)(4), the Division of Motor Vehicles is subject to the provisions of the Administrative Procedures Act as they pertain to declaratory rulings. Section 42-35-8 provides:
 "Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency. Rulings disposing of petitions have the same status as agency orders in contested cases."
Defendants contend that the letter, dated August 17, 2005, from one of the Plaintiffs, through counsel, to the Director, constitutes such a petition for declaratory ruling.[1]
Accordingly, the Defendants contend that the Director's response, dated August 29, 2005, constitutes a "declaratory ruling" of the Director, subject only to appellate review as a "contested case" under the Administrative Procedures Act.
In reviewing the August 17th letter and the August 29th
response, the characterization of the process as a "request for declaratory ruling" seems strained at best. The State has introduced no rules or regulations that might afford the Court an understanding of the procedure that the Director would employ for issuance of a declaratory ruling, nor does Plaintiff's counsel or the Director refer to any such procedure in their correspondence. Essentially, counsel's letter attaches a copy of an inter-office legal memorandum prepared by DMV counsel, and sets forth argument as to why the memorandum reaches an erroneous legal conclusion. The letter concludes with the closing sentence, "I would appreciate it if you would advise me of what course of action will be taken regarding this matter." The response is entitled "Request for Clarification of Division of Motor Vehicle Policy," and the requesting party was not offered any opportunity for a hearing. In fact, the description of the vehicles in question was achieved through the Director's access to the requesting party's website. Based on the circumstances and nature of counsel's inquiry, the Court does not agree that the letter of inquiry constitutes a request for declaratory ruling subject to the Administrative Procedures Act.
Furthermore, G.L. 1956 § 8-2-13 confers exclusive original jurisdiction to the Superior Court to hear "suits and proceedings of an equitable character and of statutory proceedings following the course of equity." Our Supreme Court has noted that "jurisdiction of a court of equity to aid a respondent who claims he is being irreparably harmed by the conduct of administrative proceedings may not be disputed." La Petite Auberge, Inc. v.R.I. Comm'n for Human Rights, 419 A.2d 274, 279 (R.I. 1980) (citing Jordan v. United Ins. Co. of Am.,
110 U.S. App. D.C. 112, 289 F.2d 778, 782-83 (D.C. Cir. 1961); Lahey Clinic Found.Inc. v. Health Facilities Appeals Bd., 376 Mass. 359,380 N.E.2d 675, 682 (1978)). Requiring all of the Plaintiffs to return to the Department of Administration and require that they formally request a declaratory ruling, thereafter seeking review thereof in the District Court, would sanction a circuitous and futile undertaking.
Where a plaintiff's rights are affected by a statute, they are entitled to bring a declaratory judgment action despite the possibility that administrative remedies may be available. SeeTaylor v. Marshall, 119 R.I. 171, 376 A.2d 712 (1977). The Superior Court has been conferred concurrent jurisdiction with the family court over matters brought under the Uniform Declaratory Judgments Act, G.L. 1956 § 9-30-1, et seq. In addition, where the question presented is ultimately a matter of law, in this case a matter of statutory construction, requiring the Plaintiffs to resort to an administrative forum would needlessly delay resolution of this dispute.[2] Such needless delay would run contrary to the purpose of the Uniform Declaratory Judgments Act, which is to facilitate the prompt termination of controversies. See Fireman's Fund Ins. Co. v.E.W. Burman, Inc., 120 R.I. 841, 391 A.2d 99 (1978).
Accordingly, this Court has jurisdiction to hear and determine the claims contained in the Plaintiffs' Verified Complaint.
II. STANDING AND ENJOINING THE ENFORCEMENT OF CRIMINAL LAWS
Defendants argue that since it is the customers of the Plaintiffs, rather than the Plaintiffs themselves, who are affected by the recent interpretation of the statute concerning the type of operator's license required, the Plaintiffs lack the requisite standing to bring these claims. In Rhode IslandOpthalmological Society v. Cannon, 113 R.I. 16, 22,317 A.2d 124, 128 (1974), our Supreme Court discussed two aspects of standing as follows: (1) "* * * whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," and (2) "* * * whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Id. (quoting Assoc. ofData Processing Serv. Org., Inc. v. Camp, 397 U.S. 150, 152-53,90 S.Ct. 827, 829 (1970)). Further, the Rhode Island Supreme Court stated, "[the] better-reasoned cases hold that a person who is directly adversely affected in his economic interest by the administrative decision which he challenges has the required standing. The question is whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged statute. If he has, he satisfies the requirement of standing." Rhode Island Opthalmological Society,113 R.I. at 25-26, 317 A.2d at 129.
In the instant case, the Plaintiffs are not simply relying on the rights and interests of their present or future customers who might be affected by a decision relative to the type of operator's license necessary to drive a particular type of vehicle. Rather, the Plaintiffs allege an injury in fact, an injury that would result to their own business and property interests were the State and the Town to follow the Director's current statutory interpretation. The Town has been delegated the responsibility of issuing licenses for the rental or leasing of motorized bicycles on the island. Section 31-19.3-3. The Plaintiffs currently are licensees who rent or sell such vehicles on Block Island. On September 28, 2005, after the Town received notice from the Administrator of Motor Vehicles that the rental fleets were to be characterized under state law as motor scooters rather than motorized bicycles, the Chief of Police wrote to all rental licensees indicating that the operation of such vehicles would require the driver to have a motorcycle license. The letter further reminded the licensees that "it is incumbent on you, per Article V, Section 8-77 [of the Town ordinances], to comply with `all applicable town ordinances and the laws of the state.'" It is clear from the plain meaning of the Chief's letter, as well as from the context in which it was delivered, that rental operators who failed to insure that their customers had the proper operator's license were putting in jeopardy their continued licensure under the Town's ordinance. That business license has been determined by our Supreme Court to be a valuable property interest subject to protection under the due process guarantees of the United States Constitution. See Leone v. Town of NewShoreham, 534 A.2d 871, 874 (R.I. 1987).
The existence of such a property right in their license to rent these vehicles also distinguishes this case from that ofCicchetti v. Anderson, 90 R.I. 76, 155 A.2d 64 (1959). InCicchetti the plaintiffs were members of the general public who challenged a generally applicable town ordinance prohibiting through traffic on certain public highways in the town. The Court reasoned that since the plaintiffs had no property rights in the public highways of the town, they did not come within the exception to the rule that equity will not interfere with the enforcement of the criminal law. Here, to the contrary, the risk of enforcement of the DMV's statutory interpretation would fall not only on the operator/customers, but also would have a direct impact on the property interests of the rental companies. SeeConte v. Roberts, 58 R.I. 353, 192 A. 814 (1937). Accordingly, the Plaintiffs have the requisite standing to pursue these claims.
III. RIPENESS AND JUSTICIABILITY
It is axiomatic that declaratory judgment actions are not intended as a device for the determination of abstract questions, or for the rendering of advisory opinions. Lamb v. Perry,101 R.I. 538, 542, 225 A.2d 521, 523 (1967). The hallmark of a justiciable controversy is one in which the dispute between actual parties will assist the Court in focusing on the issues in the context of actual, rather than hypothetical facts. A plaintiff in seeking declaratory relief must evidence a personal stake in the outcome, as well as an entitlement to actual and articulable relief. McKenna v. Williams, 874 A.2d 217, 226-27
(R.I. 2005). "By definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action; that is to say, a plaintiff who has suffered `injury in fact.'" Meyerv. City of Newport, 844 A.2d 148, 151 (R.I. 2004) (quotingRhode Island Opthalmological Society, 113 R.I. at 28,317 A.2d at 131). Such "injury" may be characterized as "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not `conjectural' or `hypothetical.'" Id. at 151 (citingPontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997)) (citation omitted).
Here the actual threat to the continuing business interests of the Plaintiffs, as well as the State's current interpretation of a state statute that jeopardizes the continuing economic viability of such interest, is sufficient to create an actual, justiciable controversy amenable to a declaratory ruling from this Court. The testimony at hearing demonstrates that the parties are not simply raising a hypothetical matter, or asking for an advisory opinion.
IV. STANDARD OF REVIEW
Having reviewed and rejected Defendants' jurisdictional and procedural defenses, it is appropriate for the Court to consider the propriety of issuing a preliminary injunction. "In deciding whether to issue a preliminary injunction, the hearing justice should determine whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701,705 (R.I. 1999) (citing Fund for Cmty. Progress v. United Way ofSe. New England, 695 A.2d 517, 521 (R.I. 1997)).
V. FINDINGS OF FACT
In determining whether a preliminary injunction should issue, the Court must make findings of fact in accordance with Rule 52(a) of the Super. R. Civ. P. Based upon the evidence presented at the hearing, both by way of live testimony as well as by way of affidavit, the following constitutes the Court's findings of fact:
 1. The named Plaintiffs, with the exception of Java Speed Scooter, LLC (Java Speed), are all businesses located in the Town of New Shoreham, Rhode Island (Block Island) who engage in the seasonal leasing or rental of two wheeled vehicles, including those which the Plaintiffs characterize as "mopeds."[3]
 2. Each of the Block Island Lessors currently registers and maintains a fleet of thirty-four (34) two-wheeled motor vehicles for short term rentals or longer term leasing.
 3. Java Speed, located in Providence, Rhode Island, is a retailer of two-wheeled vehicles. Java Speed does not rent or lease these vehicles, but sells and repairs them. Java Speed does not register any of these vehicles in its own name.
 4. Motorized bicycles are not titled whereas motor driven cycles and motorcycles are titled.
 5. Motorized bicycles require an operator's license to be driven on the public ways of this State whereas motor driven cycles and motorcycles require a special motorcycle license.
 6. Obtaining a motorcycle license requires the applicant to be 18 years old and to have a valid operator's license. The process of obtaining a motorcycle license entails additional time, expense and effort in the form of a special driver education program, learner's permit and examination.
 7. All three types of two-wheeled motor vehicles — motorized bicycles, motor driven cycles and motorcycles — are required to be registered. Upon registration, all three types of two-wheeled vehicles are issued a license plate denoted "motorcycle."
 8. The Block Island Lessors began to introduce non-pedaled vehicles into their rental fleets during the late 1980's and, by 1997, none of the two-wheeled motor vehicles comprising their respective fleets had pedals. Currently, none of the two-wheeled motor vehicles in the Lessors' rental fleets have pedals or an independent means of human propulsion.
 9. The Lessor Plaintiffs have registered their fleets of two-wheeled vehicles by preparing a registration application (Form TR-1) for each vehicle. The TR-1 forms filed with the DMV generally classified the vehicles as "mopeds." Together with the registration application, the lessor/owner of the vehicle presents a Manufacturers' Statement of Origin (MSO) or a Certificate of Origin issued by the vehicle manufacturer. Such certificates do not indicate the presence or absence of pedals on the vehicles, but do specify the maximum horsepower for each vehicle. These statements or certificates are not retained by the DMV if the registration is characterized as a "moped" registration.
 10. The Certificates of Origin vary greatly in how each vehicle is described, either denominating the vehicles as "scooters", "motor driven cycles", "motorized bicycles" or "mopeds."
 11. In registering these vehicles, they are registered as rental fleets, and are registered through the Fleet Registration Section of the DMV. The vehicles are not seen by the DMV staff at the time of registration, and renewal registrations are handled by mail. The registration certificates issued by the DMV have the word "moped" typed at the top of the certificate. The license plates issued for all two-wheeled vehicles in Rhode Island bear the word "motorcycle." There is no license plate denominated as "motorized bicycle" or "moped."
 12. Every spring, the Block Island Lessors have their fleets of rental vehicles inspected by a private business licensed, trained and authorized by the DMV to conduct safety and emission inspections of motor vehicles.
 13. The inspector verifies the registration, plate number and vehicle identification number of each vehicle and then conducts a twenty-four (24) point safety inspection of each vehicle. The inspector records his results on a form denoted "motorcycle inspection report," and issues each qualified vehicle an inspection sticker denoted "motorcycle inspection approval."
 14. The vehicles have already been registered at the time this inspection occurs and the inspector does not make an independent determination of the proper classification for registration purposes.
 15. The overwhelming majority of two-wheeled motorized vehicles currently available on the market do not have pedals or include pedals as a special option. There are currently three available 49 cc models of two-wheeled vehicles with pedals available for purchase in the United States.
 16. The current fleet of two-wheeled vehicles that do not have pedals are cleaner, quieter, easier to maintain, and safer to operate than the older models of mopeds that had pedals. There was presented no evidence comparing the safety or efficiency of the operation of the vehicles in the current fleet with those pedaled vehicles currently available in the market.
 17. Most customers who rent or lease from the Block Island Lessors' current fleet, do not possess motorcycle licenses and the Block Island Lessors do not require such licensure as a precondition to renting or leasing said vehicles.
 18. The current fleet available for rental or lease by the Block Island Lessors falls within the maximum horsepower and maximum speed capabilities for motorized bicycles because they are equipped with federally mandated factory installed RPM limiters (also known as "speed governors").
 19. The factory installed RPM limiters can be easily and inexpensively removed from the vehicles, and one of the Plaintiffs, Java Speed, has performed this service for its customers who purchase such vehicles. There is no evidence that the Plaintiff Lessors have ever tampered with or removed the RPM limiters from the fleets of vehicles which they offer for rent on Block Island.
 20. Until November, 2004, the Defendants did not seek to enforce an interpretation of applicable statutes to require operators of leased two-wheeled vehicles in the rental fleets on Block Island to have motorcycle licenses or endorsements to operate such vehicles.
 21. An internal DMV memorandum was issued in June, 2004, containing a legal interpretation which concluded that under Rhode Island law, only "motorized bicycles" and "motorized tricycles" were exempt from the requirement that operators have motorcycle licenses, and that in order for a vehicle to be classified as such, it must be capable of being propelled by human power in addition to being motor driven.
 22. At least one of the Plaintiffs, Java Speed, was advised of this interpretation in November, 2004.
 23. As a result of an investigation, Brian Peterson, Associate Director of the Department of Administration, on July 18, 2005, caused an internal memorandum to be issued advising all DMV personnel that if a two-wheeled motorized vehicle "does not have pedals capable of propelling the vehicle by human power" it is not a "motorized bicycle" as defined under Rhode Island law, and must be registered as a "motor driven cycle."
 24. On August 17, 2005, Java Speed Scooter, through legal counsel, sent the Director a letter with attachments challenging the DMV's interpretation and application of the statutory law, and advanced its own interpretation and application of the same provisions.
 25. After conferring with legal counsel, Mr. Peterson, and other staff, the Director issued, on August 29, 2005, a letter with attachments in response to Java Speed's August 17th
correspondence.
 26. On September 22, 2005, the Administrator of the DMV sent written notice to all police departments in the State of Rhode Island advising them of the DMV's position as to what constitutes a motorized bicycle or moped and what constitutes a motor drive cycle or motor scooter, for purposes of registration and licensing.
 27. The Block Island Lessors operate their business six months per year, but the majority of rentals occur annually between the period beginning in mid-June and ending in mid-September.
VI. ANALYSIS AND CONCLUSIONS OF LAW
This Court must weigh the various factors in reaching its conclusion as to whether a preliminary injunction should issue. It seems to the Court that the Plaintiffs have demonstrated a reasonable likelihood that if the current statutory interpretation is maintained by the Department of Administration and the DMV, and if, as indicated, the Town officials give full force and effect to such an interpretation, the Plaintiffs will suffer irreparable harm. That harm will result either in losing nearly the entirety of their moped rental businesses, or in having to restock their current vehicle inventory with pedaled vehicles to bring their fleets in line with the statutory interpretation.
In addition, the Plaintiffs are correct that were this Court to issue a preliminary injunction, the status quo would be maintained, in that at least since 1992, the Plaintiffs have leased or sold these vehicles to persons who did not possess motorcycle licenses, without interference from Town or State officials.
Notwithstanding the above conclusions, it would be improper for this Court to issue an injunction that would sanction a strained and improbable interpretation of statutory construction. Unless the Plaintiffs can "make out a prima facie case" establishing a reasonable likelihood of success on the merits of their claims, this Court may not issue a preliminary injunction. DiDonato v.Kennedy, 822 A.2d 179, 181 (R.I. 2003) (citing Fund for Cmty.Progress, 695 A.2d at 521.); See also In Re StateEmployees' Union, 587 A.2d 919, 925 (R.I. 1991); PawtucketTeachers Alliance Local No. 920, AFT, AFL-CIO v. Brady,556 A.2d 556, 557 (R.I. 1989).
The starting point for any such analysis must be whether the Plaintiffs' interpretation of the statute is reasonably likely to prevail when this Court applies the tenets of statutory construction. In this Court's view, applying such standards, the Plaintiffs are not likely to succeed on the merits of their claims.
The cardinal rule of statutory construction is that the words employed in any statute must be interpreted literally and given their plain and ordinary meaning. Henderson v. Henderson,818 A.2d 669, 673 (R.I. 2003). "`If the language is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent.'" Id. (quoting Gilbane Co. v. Poulas,576 A.2d 1195, 1196 (R.I. 1990)).
The statute in question, § 31-1-3(1) reads as follows,
 "`Motorized bicycles' means two (2) wheel vehicles which may be propelled by human power or helper power, or by both, with a motor rated not more than one and one-half (1.5) brake horsepower or two (2) (S.A.E.) horsepower which is capable of a maximum speed of not more than thirty (30) miles per hour."
Plaintiffs have suggested that the use of the word "may" in the statute connotes the disjunctive. Under this interpretation, if a vehicle is solely propelled by "helper power," it would not be necessary that the vehicle also be capable of propulsion by "human power." The Court cannot accept such an interpretation as consistent with the plain meaning of the statute. The use of the word "may" in the context of this statute means "are able," or "are capable," thus leading to the plain meaning that in order to be classified as a "motorized bicycle," the vehicle must be ableto be propelled by "human power" or be able to be propelled by "helper power" or by both. The plain meaning of the word "helper power" suggests that the motor must help the human propulsion, and not be independent thereof. Thus, a "motorized bicycle," in accordance with the plain meaning of the statute, must be capable of being propelled by more than one means of power, and that each means of propulsion is capable of operating the vehicle independent of the other.
The Plaintiffs' suggested reading of the statute is that as long as a vehicle has the horsepower and speed limitations set forth in the latter portion of the statute, the Court can ignore the limitation that the vehicle also be capable of propulsion by human power. Statutes must be construed to give effect to each sentence, clause or word of a statute, with no word or clause deemed meaningless. State v. DeMagistris, 714 A.2d 567, 573
(R.I. 1998); State v. Bryant, 670 A.2d 776, 779 (R.I. 1996). Were this Court to accept that interpretation advocated by the Plaintiffs, the Court would simply ignore that portion of the statute that requires a means of human propulsion to satisfy the definition of motorized bicycle, or ignore the use of the term "helper power."
Also, the Plaintiff's disjunctive construction of the statute would lead to the absurd result of characterizing vehicles propelled only by human power as "motorized bicycles," which would obviously be tortured and contrary to the definition of bicycle found elsewhere in the general laws.[4] This Court must avoid any construction of a statute that leads to an unreasonable or absurd result. LaPlante v. Honda N. Am., Inc.,697 A.2d 625, 628 (R.I. 1997).
Finally, § 31-3-3(1) must read in the context of other provisions of the General Laws. For instance, § 31-3-3(j) defines motorcycles, but excludes from that definition "bicycles with helper motors as defined in subsection (1) of this section." Similarly, the statutory definition of "motor driven cycle" in §31-3-3(k), expressly excludes "bicycles with helper motors as defined in subsection (1) of this section." Thus, when the entire statutory framework relating to two-wheeled vehicles is read in its entirety, it becomes evident that the legislature required that a motorized bicycle, as opposed to other defined two-wheeled vehicles, have both human and motorized means of propulsion. Because the term "moped" is never used in any of the statutes in question, the Court is constrained to find that only "motorized bicycles" and "motorized tricycles" as defined in the statute are exempt from the requirement that the operators thereof have motorcycle licenses. The vehicles currently in the Block Island rental fleets are neither "motorized bicycles" nor "motorized tricycles," as the legislature currently classifies two-wheeled vehicles. Accordingly, the Plaintiffs have not demonstrated any reasonable likelihood of prevailing on the merits of their claims as they relate to statutory construction.
No matter how much of a hardship ensues from the application of the long-standing tenets of statutory construction, any such harm has not been caused by these Defendants. Rather, the statutes simply have not been reconsidered in light of the modern technology relating to two-wheeled vehicles operating on the highways of this State. This Court cannot bend and manipulate the rules of statutory construction to arrive at a result oriented conclusion which might represent the Plaintiffs', or even the Defendants', conclusions of what might be good public policy. Under our time-honored concepts of separation of powers, it is not up to the Department of Administration, as an executive agency, or this Court, in the exercise of its judicial power, to alter the plain meaning of a statute. If that plain meaning no longer "works," then it is up to the legislature to come up with a new compendium of laws to deal with the issue of what types of two-wheeled vehicles should be operated by those persons with the requisite training to qualify for a motorcycle license, and those vehicles, if any, which can be operated by persons not having such a license or the training that is a prerequisite to its issuance. The Plaintiffs' failure to support a reasonable likelihood of success on the merits of its statutory construction claim, and the possible hardship to the public interest were this Court to ignore clear legislative provisions, militates against the issuance of a preliminary injunction.
Based on the evidence presented, the Plaintiffs have likewise failed to prove their likelihood of prevailing on the merits of their claim for equitable estoppel. The elements of the doctrine are discussed in El Marocco Club, Inc. v. Richardson,746 A.2d 1228 (R.I. 2000):
 "For equitable estoppel, or estoppel in pais, to apply, the following elements must be established: first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury. Moreover, `the key element of an estoppel is intentionally induced prejudicial reliance.'" Id. at 1233-34 (citations omitted).
As a general rule, courts are reluctant to enjoin a governmental entity from enforcing a statute or ordinance. The party claiming estoppel against a governmental entity must show some affirmative misconduct or representation which induced reasonable reliance, to the claimant's detriment. ProvidenceTeachers Union v. Providence Sch. Bd., 689 A.2d 388, 391-92
(R.I. 1997) (quoting Lichtenstein v. Parness, 80 R.I. 135, 138,99 A.2d 3, 5-6 (1953)). Mere inaction on the part of the government is not sufficient affirmative conduct upon which to premise a claim of estoppel against governmental conduct.Ferrelli v. Dept. of Employment Sec., 106 R.I. 588, 593,261 A.2d 906, 909 (1970).
Here, the Plaintiffs argue that the DMV, in allowing the Plaintiffs to register their fleets of two-wheeled vehicles as "mopeds," caused the Plaintiffs to rely on that characterization in purchasing and maintaining the current "non-pedaled" fleets of vehicles, and that it would be unfair to allow the Defendants to enforce a statutory construction to the contrary. The Plaintiffs, however, have failed to prove any affirmative conduct on the part of the governmental Defendants that would rise to the level of affirmative conduct designed to induce the Plaintiffs to make investments in the current line of rental vehicles. There is simply no evidence that any representative of the Town or the State told the Plaintiffs that the vehicles without pedals or other means of human propulsion would qualify as "motorized bicycles." In addition, it appears the purchase of the non-pedaled vehicles by the Lessor Plaintiffs occurred prior to registration, and without any input or encouragement from the Defendants. The only evidence is that the DMV, based upon the presentation of an application prepared by the Plaintiffs, together with certificates of origin stating the maximum horsepower of the vehicles, has permitted the registration of these fleets of vehicles as "mopeds." The Plaintiffs have interpreted such registration to mean that the vehicles were to be considered "motorized bicycles" and therefore could be rented to operators who were not licensed to drive motorcycles. The act of registration under these circumstances is not the type of affirmative representation that should constrain the Defendants from their current clarification of the statute. In fact, the registration of the vehicles does not in any way suggest that the vehicles were classified as "motorized bicycles" as that term is used in the statutory framework.
Even if the Court were to accept Plaintiffs' characterization of the conduct of DMV in permitting the registration of these vehicles as "affirmative" in nature, this court cannot permit the clerical act of an agency employee to result in an erroneous interpretation of law becoming institutionalized into the indefinite future through invocation of the doctrine of estoppel. Failure to discover the true scope of a government agent's actual authority does not provide grounds of relief for the individual who detrimentally relied upon an agent's representations or actions. Crawford v. Potter, 797 A.2d 489, 493 (R.I. 2002) (quoting Romano v. Ret. Bd. of the Employees' Ret. Sys.,767 A.2d 35, 43 (R.I. 2001)). "Although `in an appropriate factual context the doctrine of estoppel should be applied against public agencies to prevent injustice and fraud where the agency or officers thereof, acting within their authority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his [, her, or its] detriment,' Ferrelli, 106 R.I. at 594,261 A.2d at 910 (emphasis added), neither a government entity nor any of its representatives has any implied or actual authority to modify, waive, or ignore applicable state law that conflicts with its actions or representations." Romano, 767 A.2d at 39-40. Accordingly, this Court cannot find that the ministerial act of registering these vehicles as "mopeds" can in any way result in ade facto administrative amendment to state law, law which clearly and unambiguously requires that the only motorized two-wheeled vehicle exempt from being operated without a motorcycle license is a "motorized bicycle" which, among other criteria, must be capable of being propelled by human power. Thus, the Court finds that the Plaintiffs have not sustained their burden of showing a reasonable likelihood of prevailing on their claims of equitable estoppel as alleged in Count V of the Amended Complaint.[5]
Finally, this Court feels constrained to address the issue of the immediacy of the harm alleged. Our Supreme Court has made clear that injunctive relief should not be issued unless the plaintiff can demonstrate that it is being threatened with someimmediate irreparable harm for which no adequate remedy of law lies. See In Re State Employees' Union, 587 A.2d at 925. The evidence is clear that the Plaintiffs' business is of a seasonal nature, and that the business of renting or selling these vehicles on Block Island will not recommence until at least the late Spring of 2006. Accordingly, the Plaintiffs have sufficient opportunity to address concerns to the General Assembly, or to consider alternatives that would allow the uninterrupted operation of their businesses.
VII. CONCLUSION
For the reasons discussed above, Plaintiffs' motion for issuance of a preliminary injunction is denied, and the temporary restraining order heretofore issued shall be vacated. The parties shall submit an appropriate form of order.
[1] It should be noted that counsel's letter is written on behalf of just one of seven plaintiffs who have joined in this action.
[2] The Plaintiffs cite to Burns v. Sundlun, 617 A.2d 114
(R.I. 1992), in which our Supreme Court held:
 "We believe that requiring plaintiff in this case to first take his appeal to the division's hearing board would uselessly delay our judicial review . . . plaintiff raises a pure question of law. There is no factual record that the division's hearing board could develop that would assist us in our decision. In addition the question raised by plaintiff is a question of statutory interpretation outside the agency's area of expertise. Requiring this matter to be heard by the division's hearing board would not forward the purposes underlying the exhaustion of remedies requirement. Accordingly we hold that the exhaustion of administrative remedies requirement does not apply in this case and now turn to the merits of plaintiff's lawsuit." Id. at 117.
[3] The Block Island based businesses are hereafter referred to as the "Block Island Lessors" or the "Lessors."
[4] Section 31-3-3(e) provides that a bicycle is a two-wheeled vehicle, except scooters and similar devices, "propelled exclusively by human power."
[5] The Court has addressed the unlikelihood of Plaintiffs prevailing on the claims set forth in Count I (statutory construction) and Count V (equitable estoppel) of the Amended Verified Complaint. The Administrator of the DMV, through the Department of Administration, has the authority under state law to enforce the provisions of Title 31 of the General Laws, including regulating the operation of motor vehicles and the use of the public highways of this State. See § 31-2-3(a). In the pursuit of its statutory responsibilities, the Department of Administration has reasonably and properly construed the legislative mandates relating to the operation of two-wheeled vehicles on the highways of this State. Under the circumstances, this Court is not of the opinion that the Plaintiffs have shown a reasonable likelihood of prevailing on the merits of their claims for regulatory taking (Count II); due process and equal protection under the United States Constitution (Count III); or for violation of the equal protection clause of the Rhode Island Constitution (Count V).