261 A.2d 906.

JOSEPH FERRELLI *vs.* DEPARTMENT OF EMPLOYMENT
SECURITY.

FEBRUARY 16, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This is a claim for benefits filed March 14, 1968, under the Rhode Island Temporary Disability Insurance Act. After hearing, the director of the Department of Employment Security issued a decision dated March 27, 1968, in which he found that the petitioner was "not eligible" to receive benefits. Thereafter, on April 3,

1968, the claimant appealed from the decision of the director to the board of review of the department. The board, after a hearing on the appeal, filed a decision dated May 20, 1968, in which it sustained the decision of the director. The claimant then prosecuted an appeal from that decision to the Superior Court pursuant to the provisions of G. L. 1956, §42-35-15. The Superior Court in its decision sustained the decision of the board of review, and the claimant is now in this court for a review of the decision of the Superior Court pursuant to the provisions of §42-35-16.

The record discloses that the director's finding of ineligibility rested upon his conclusion that the claimant had not, during the base period preceding his claim, received wages in a sufficient amount to establish his eligibility for benefits. It appears that eligibility as pertinent to the issue here is acquired only when wages earned during the base period amount to at least $1,200. It is not disputed that the claimant had received from a Rhode Island employer, Arden Engineering Co., Inc., the amount of $795.50 and had received wages from two out-of-state employers, both located in the Commonwealth of Massachusetts, which, if included in the computation, would establish that he had received wages in a sufficient amount to be monetarily eligible for benefits. The board of review, it is clear, rested its decision on the fact that the contributions from the out-of-state employers were erroneously received and could not be credited to the account of the claimant for the purpose of establishing monetary eligibility. The question with which we are confronted, then, is whether in the circumstances of this case the claimant is entitled to be credited with the wages received for services performed for either or both of the two employers located in Massachusetts in the course of determining his monetary eligibility to receive benefits.

The claimant argues that he is entitled to credit for wages received for services performed in Massachusetts in that the

work was "employment" as contemplated by the provisions of §28-42-4. That statute, in pertinent part, provides that employment shall "* * * include an individual's entire service, performed within or both within and without this state if (1) the service is localized in this state; or (2) the service is not localized in any state but some of the service is performed in this state and (i) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or (ii) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed but the individual's residence is in this state." Section 28-42-5 goes on to define what constitutes localized service, providing that service shall be deemed to be localized within a state if "(1) the service is performed entirely within such state; or (2) the service is performed both within and without such state, but the service performed without such state is incidental to the individual's service within the state; for example, is temporary or transitory in nature or consists of isolated transactions."

We are unable to agree that the service performed by the claimant for the Massachusetts employers was employment within the purview of §28-42-4. The board in its decision said: "The facts indicate that the services performed for the said Massachusetts employers were localized in Massachusetts and their work in other New England states was only incidental to their employment in Massachusetts and that the contributions were apparently erroneously reported in Rhode Island." There is in the record some evidence tending to support this finding. This particular item of evidence is a letter from the Division of Employment Seccurity of the Commonwealth of Massachusetts, apparently sent to the Rhode Island agency in reply to an inquiry by that agency concerning the status of one of the Massachu-

setts employers of the claimant. The letter, in pertinent part, says: "Our examination of the books and records of this employer through and including the third quarter of 1967 show that their workers were properly reported to Massachusetts since their service was localized here and their work in the other New England states was only incidental to their employment in Massachusetts."

It is to be conceded that the probative force of this evidence is hardly substantial. We are persuaded, however, that it is competent on the question of the status of at least one of the Massachusetts employers and clearly supports a finding that, with respect to such employer, the claimant would be unable to establish that his employment was within §28-42-4.

Section 42-35-15 prescribes the limitations on the fact-finding power of the Superior Court on a review of an administrative agency's decisions. It provides, in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." In the circumstances and in view of the statutory limitation on the Superior Court, we are of the opinion that it properly sustained the finding of the board of review that claimant's employment was not within the coverage of §28-42-4.

That statute requires that employment to be within the provisions of §28-42-4, the services performed must have been localized in Rhode Island or, in the alternate, not localized in any state but some of it performed in Rhode Island. In the light of the findings of the board, it is clear that the services here involved were localized in Massachusetts and that no part thereof was performed in Rhode Island. It fails, then, to satisfy either of the above-cited provisions of the statute, and in that circumstance §28-42-4 is without application.

We turn, then, to the claimant's contention that estoppel

will lie to preclude the agency from raising the question of his eligibility to receive benefits in this case. The claimant urges, as we understand him, that there was an agreement between a Mr. Kiley, business agent of the union of which he is a member, and a Mr. Clarke, apparently a representative of the agency. According to the claimant, the agreement related to the payment of contributions to the Rhode Island fund by out-of-state employers and was implemented by the action of Mr. Clarke in providing the union with forms which its members were to give to out-of-state employers for the purpose of enabling them to make such contributions to the fund. He further argues that, pursuant to this agreement, he provided his out-of-state employers with the forms and that contributions were made to the agency. He further notes that on two prior occasions when he made a claim for benefits, he was held to be monetarily eligible on the basis of contributions that had been made to the fund by his out-of-state employers. This is the course of conduct upon which the claimant rests his argument that the doctrine of estoppel is applicable in this case.

Generally, the doctrine of estoppel will not be applied against a governmental agency acting in a public capacity. However, there is a growing recognition among the courts that in peculiar circumstances the doctrine should be available even where a public agency is involved. In proper cases where great injustice or loss would result, a municipality or agency thereof, acting within its authority by officials authorized to do so, which induced another to expend effort or money may be estopped to deny that its official and binding consent did not induce the expenditures. In *Mayor and City Council of Baltimore* v. *Chesapeake Marine Ry.*, 233 Md. 559, 580, 197 A.2d 821, 831-832, the Maryland court said: "Estoppel against a municipal corporation growing out of affirmative action must be predicated upon the acts or conduct of its officers, agents or

official bodies who are acting within the scope of their authority. 10 McQuillin, *Mun. Corp.* (3rd Ed.), Sec. 28.56 ✻ ✻ ✻ ''

In short, it is now widely recognized that the doctrine of estoppel may in a proper case be invoked against public agencies to prevent injustice and fraud. Whether the doctrine should be applied in such instances depends upon a consideration of all the circumstances in the case. Before it should be applied, it should appear that there was some positive action on the part of the agents which had induced the action of the adverse party. Mere nonaction is insufficient to justify an application of the doctrine. In *New-Mark Builders, Inc.* v. *City of Aurora*, 90 Ill.App.2d 98, 102, 233 N.E.2d 44, 46, the court said: "If under all of the circumstances, the affirmative acts of the public body have caused another to take certain actions which have created a situation where it would be inequitable and unjust to permit the public body to, in effect, retract what it previously had done, the doctrine of estoppel may be applied against it." This liberal view with respect to the application of the doctrine is supported also in *DeTreville* v. *Groover*, 219 S. C. 313, 65 S.E.2d 232; *Versailles Township Authority* v. *City of McKeesport*, 171 Pa. Super. 377, 90 A.2d 581; *Town of Jeffersontown* v. *Holloway*, Ky., 269 S.W.2d 728; *City of Bayonne* v. *Murphy & Perrett Co.*, 7 N. J. 298, 81 A.2d 485; *Mid-Georgia Natural Gas Co.* v. *City of Covington*, 211 Ga. 163, 84 S.E.2d 451.

This court has long recognized that the doctrine of estoppel may in appropriate circumstances be invoked against a public body. In *Murphy* v. *Duffy*, 46 R. I. 210, 124 A. 103, a taxpayer sought to enjoin the town treasurer from making payments to a contractor for work performed by him in the erection of a schoolhouse. We held that the doctrine of estoppel would be applicable for the purpose of precluding the town from asserting that the school was

being built at a location that had not been approved by the town school committee as was required by statute. In *Santos* v. *City Council*, 99 R. I. 439, 208 A.2d 387, we again recognized that the doctrine of estoppel could be invoked against a municipality but held that on the facts of that case there was no evidence that any representations had been made by the city council upon which the petitioner could reasonably have relied to his detriment. Again, in *Spouting Rock Beach Association* v. *Garcia*, 104 R. I. 451, 244 A.2d 871, we held it unnecessary to pass upon the question of whether the doctrine of estoppel would be applicable to preclude a municipality from asserting rights in and to a public highway.

It is, then, our opinion that in an appropriate factual context the doctrine of estoppel should be applied against public agencies to prevent injustice and fraud where the agency or officers thereof, acting within their authority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his detriment.

It does not appear that the board made a finding as to whether representations allegedly made by Mr. Clarke, in accordance with the extensive testimony of Mr. Kiley on that question, were in fact made. It is clear from the transcript that Mr. Kiley did testify at some length as to the making of representations relating to the use of agency forms by out-of-state employers by members of Mr. Kiley's union. Mr. Kiley referred to Mr. Clarke as being an employee of the agency, and the claimant's counsel, according to the transcript, referred to Mr. Clarke as "* * * an employee of the agency, a labor liaison man * * *."

The absence of a finding by the board as to such agreement between the agency and the claimant's union is, in our opinion, significant of the board's misconception or overlooking of this issue. In the circumstances, then, we are

persuaded that the interest of justice would be best served if this matter were remanded to the board of review for further consideration of the evidence on this issue with authority to take such further evidence with respect thereto as may be deemed necessary to prevent manifest injustice.

The Superior Court, in our opinion, should have remanded the case at the conclusion of its hearing to the board of review with direction to consider the issue raised by the testimony as to representations purportedly made by Mr. Clarke as an employee of the agency and whether, if they were made, they were within the scope of his authority as such an employee. It is our opinion, then, that in the circumstances such a remand should be ordered by the Superior Court.

The cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

*John M. Booth,* for petitioner.

*Irving J. Bilgor,* for respondent.