[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of defendant, the Rhode Island Department of Human Services ("DHS"), denying plaintiff's request for the correction of an alleged underpayment of social welfare benefits. Plaintiff contends that DHS is obligated to pay to her the amount of such alleged underpayment. Jurisdiction in this Court is by virtue of R.I. Gen. Laws § 42-35-1 (1988).
Facts/Travel
The facts relevant to the instant appeal are as follows. On September 28, 1989, the plaintiff, Delores Brown, filed a written application with DHS for Aid for Families with Dependent Children ("AFDC"). In her application, she requested AFDC for all of the members of her household: herself, her two children, Talieb and Rukiah Brown, and her younger brother, Mark Bowie. At the time of this application, Mark, who had been living with Ms. Brown since the death of their parents in 1988, was receiving social security survivor's benefits.
Subsequent to her September 28, 1989 application, Ms. Brown received the first AFDC check sent on behalf of herself, Talieb, Rukiah and Mark. Ms. Brown then contacted the DHS offices and inquired of a DHS "eligibility technician," Rosemarie Lord, why the Brown household was not receiving a larger payment. Ms. Lord explained to Ms. Brown that DHS had considered Mark's social security income when calculating the amount of AFDC for the Brown household. Ms. Brown then asked whether she could elect not to seek AFDC on behalf of Mark, thereby precluding DHS from considering his social security income when calculating AFDC for the Brown household. After consulting with her supervisor, Ms. Lord erroneously told Ms. Brown that Mark was part of the same filing unit and must be included when Ms. Brown applied for AFDC for herself and her two children.
Ms. Brown failed to seek further review of DHS's determination that she was required to include Mark when applying for AFDC for herself and her two children. Instead, she included him in each biannual application she filed after September 28, 1989 through August 7, 1990. DHS therefore continued to consider Mark's social security income when calculating the Browns' AFDC benefits during the corresponding payment periods.
In her February 20, 1991 recertification application for AFDC, however, Ms. Brown, on advice of counsel, elected to ignore DHS's previous statement and she excluded Mark from her family filing unit. As a result, DHS ceased considering Mark and his social security income when calculating the Browns' AFDC and the Browns' AFDC payments increased.
Then, on May 22, 1991, Ms. Brown, through counsel, petitioned DHS to correct the underpayment of AFDC to her household which she alleged had occurred between September 28, 1989 and February 20, 1991. She based her underpayment claim on the contention that DHS's erroneous statement regarding Mark's inclusion in the Brown family filing unit caused the Brown household to receive less AFDC than they otherwise would have received. DHS denied this claim on May 29, 1991. Ms. Brown then made an intra-agency appeal and was granted a hearing, which was held on July 1, 1991. On July 29, 1991 DHS issued a final decision again denying Ms. Brown's underpayment claim. In such final decision, DHS held that Ms. Brown did not bring her underpayment claim within the 30-day limitations period prescribed by DHS regulation (hereinafter the "limitations period" or "DHS's limitations period").
Ms. Brown now appeals such final decision by DHS. In her appeal, she makes two arguments: 1) that DHS's 30-day limitations period is legally invalid and 2) that, in the circumstances of this case, DHS should be estopped from asserting such limitations period.
Standard of Review
This Court must review DHS's decision in accordance with the standards set out in § 42-35-15, which provides:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 42-35-15 precludes a reviewing court from substituting its judgment for that of an agency in regard to the credibility of the witnesses or weight of the evidence concerning questions of fact. E.g., Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988). Under this section, a reviewing court must uphold an agency decision if there is any legally competent evidence in the record supporting that decision. E.g., BlueCross Blue Shield v. Caldarone, 520 A.2d 969, 972 (1987). Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. E.g., Carmody v. Rhode IslandConflict of Interest Comm'n., 509 A.2d 453, 458 (R.I. 1986).
The Validity of the Limitations Period
Ms. Brown first challenges the validity of the DHS regulation establishing a 30-day limitations period for appealing actions taken by DHS in administering the AFDC program. She argues that such regulation is invalid because it restricts her federally-created substantive rights under 42 U.S.C. § 601-628 (hereinafter the "AFDC statute").[1]
Whether a limitations period prescribed by a state agency is an invalid restriction on rights created by the AFDC statute was addressed in Whithey v. Perales, 720 F.2d 156 (2nd. Cir. 1990). In that case, two local agencies decreased the AFDC benefits of two recipients. Each recipient then requested a hearing to contest the respective reductions in benefits, and each was denied relief because the request was time-barred under local law. Id. at 157. The recipients then consolidated their cases and appealed, contesting the validity of the locally-imposed limitations period.
On appeal, the Second Circuit held that § 602(a)(22) did not bar the imposition of limitations periods by local authorities. In reaching this holding, the Second Circuit examined the text and legislative history of § 602(a)(22) and found nothing which precluded the imposition of limitations periods by local authorities.[2]
The court then considered the policy implications raised by the issue of locally-imposed limitations periods. It found that limitations periods have the very important function of limiting the accrual of unasserted claims for AFDC benefits. This function, the court reasoned, is critical in protecting the social welfare system from "[t]he financial burden imposed . . . by the assertion of old, unexpected claims [which] might become so great at times that the current needs of the poor could not be met out of available funds." Whithey, 920 F.2d at 159. The court found, based on this, that limitations periods such as the one at issue have the beneficial effect of giving the current needs of the poor priority over the redress of past underpayments. The court also reasoned that by limiting the accrual of unasserted claims, limitations periods protect against the possibility of increasing administrative costs caused by the "need to keep the files of all recipients perpetually available" due to the possibility of hearings on underpayments.
Whithey directly disposes of the plaintiff's first contention in the instant appeal: that DHS's limitations period is invalid because it contravenes 42 U.S.C. § 602(a)(22). The plaintiff has brought nothing to the attention of this Court which contradicts the Second Circuit's analysis of the text and legislative history of § 602(a)(22) in Whithey, nor has plaintiff introduced anything which undermines that court's discussion of the policy considerations supporting its holding inWhithey. This Court therefore finds Whithey to be extremely persuasive and hereby holds that plaintiff's argument against the validity of the DHS limitations period must fail.
The Estoppel Argument
Ms. Brown also argues that the facts of this case mandate that DHS be estopped from asserting the limitations period. She contends that estoppel should be imposed because the erroneous statement by Rosemarie Lord caused her to include Mark as part of her family filing unit in each of her AFDC applications up to February 20, 1991. This inclusion resulted in less AFDC for the Brown household during the corresponding payment periods.
When evaluating Ms. Brown's estoppel argument, this Court must determine whether the elements of estoppel are present and whether estoppel is otherwise appropriate. The Rhode Island Supreme Court has stated that
 "[t]he indispensable elements of an estoppel are, first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and, secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury. Lichtenstein v. Parness, 81 R.I. 135, 138, 79 A.2d 3, 5 (1953).
Generally, estoppel will not be applied against a government agency acting in a public capacity. Ferrelli v. Dept. ofEmployment Security, 106 R.I. 588, 592, 261 A.2d 906, 909 (1970). Thus, a party must show more than the bare elements of estoppel when seeking to impose such doctrine against a government agency. For example, a party seeking estoppel against the government on the basis of an action taken by a government employee must show that such employee was authorized to take such action; estoppel against a public agency may not be based on conduct of an agency officer or employee that was outside the scope of that officer's or employee's authority. Ferrelli, 106 R.I. at 593-94, 261 A.2d at 910-11. Also, a party seeking estoppel against the government should show that imposition of such doctrine would not be against the public interest. Lernerv. Gill, 463 A.2d 1352, 1363 (R.I. 1983).
Schweiker v. Hansen, 450 U.S. 785 (1981) (reh. den.451 U.S. 1032) is particularly helpful in guiding this Court's application of the scope of authority and public interest considerations espoused in Ferrelli and Lerner to this case. The facts of Schweiker are remarkably similar to the facts in the instant dispute. The claimant in Schweiker, Ann Hansen, orally inquired of a field representative of the Social Security Administration ("SSA") whether she was eligible for certain social security benefits. The field representative erroneously told Ms. Hansen that she was not eligible. The SSA field representative also neglected to follow SSA guidelines and suggest to Ms. Hansen that she file a written application for such benefits. Because of the field representative's erroneous statement and failure to follow SSA guidelines, Ms. Hansen did not file a written application for benefits for which she was eligible until almost one year after her initial oral inquiry.
Ms. Hansen argued that the actions of the SSA field representative estopped the SSA from determining her eligibility for benefits only as of the date of her written application. She argued that the SSA should have determined her eligibility for benefits as of the date of her oral inquiry.
The U.S. Supreme Court rejected Ms. Hansen's arguments and held that estoppel could not be imposed against the SSA. In reaching its holding, the Court reasoned that there is a strong public interest in not allowing the public treasury to be charged except where the conditions prescribed by the applicable public rule-making authority have been satisfied. Id. at 788. The Court also reasoned that it would be against the public interest to put governmental agencies performing a public function at risk for every alleged mistake by one of their employees. Id. at 789-90. The Court concluded that where the conduct of an agency employee does not put a claimant in a situation which the claimant cannot correct at any time, these public interest considerations prevail. Id. at 789.
After considering all of the facts and circumstances of the instant case in light of the applicable rules of law, this Court concludes that DHS is not estopped form asserting its 30-day limitations period against the plaintiff, Delores Brown. First, it is not at all clear that Ms. Brown has established even the basic elements of estoppel. Ms. Brown bases her claim of estoppel on Ms. Lord's statement that Mark Bowie could not be removed from Ms. Brown's AFDC filing unit. Ms. Brown does not allege that Ms. Lord or any other DHS employee made any representations concerning Ms. Brown's right to file an appeal. Thus, this Court would be hard-pressed to find that Ms. Lord directed her statements at Ms. Brown for the purpose of inducing Ms. Brown to fail to file an appeal.
Even if the plaintiff has proven the elements of estoppel, it remains clear that this is not an appropriate case in which to apply such doctrine. Neither Ms. Lord nor her supervisor had the authority to contravene the DHS regulations governing the administration of the AFDC program in Rhode Island. Ms. Lord's response to Ms. Brown's inquiry therefore was not within her scope of authority. Further, such response did not put Ms. Brown in a situation which she could not have rectified at any time; Ms. Lord's statement did not impair Ms. Brown's ability to file an appeal.
In this factual situation, estopping DHS from asserting the limitations period would contravene the public interest and run afoul of Rhode Island Supreme Court precedent. Subjecting DHS to estoppel in this case would contravene the Rhode Island Supreme Court's mandate in Ferrelli that estoppel against government be based on authorized conduct. This would also subject the limitations period, and DHS' reliance thereon, to risk each time a dissatisfied claimant alleges that a DHS employee made a mistake. Such result would undermine the public interest in giving the current needs of the poor priority over the redress of past underpayments. It would also undermine the public interest in efficient administration by DHS. Furthermore, estoppel in this case would be contrary to the public interest because it would subject the Rhode Island treasury to charges by an individual who has not complied with the conditions prescribed by public authorities to regulate such charges. The plaintiff, through no direct fault of DHS, failed to bring an appeal within the 30 days prescribed by regulation. She cannot now resurrect her claim.
Conclusion
For the reasons contained herein, this Court affirms the July 29, 1991 decision of the Department of Human Services denying Delores Brown's request for a correction of underpayment because that decision is supported by reliable, probative and substantial evidence in the whole record and is not affected by error of law.
Counsel shall prepare an appropriate order for entry by this Court within ten (10) days.
[1] In particular, Ms. Brown contends that DHS's limitations period contravenes 42 U.S.C. § 602(a)(22), which requires state agencies, when administering the AFDC program, to "promptly take all necessary steps to correct any overpayment or underpayment" made to AFDC recipients.
[2] The Whithey court also distinguished two cases relied on by Ms. Brown in arguing that DHS's limitations period is invalid. According to that court, those cases, Tambe v. Bowen, 839 F.2d 108
(2d Cir. 1988), and Edwards v. McMahon, 834 F.2d 796 (9th Cir. 1987), stand for the proposition that local agencies cannot condition the substantive right to redress an underpayment upon the current receipt of AFDC benefits. The Whithey court found that neither Tambe nor Edwards addresses the question of what procedural requirements may be prescribed for the presentation of claims of underpayment. Whithey, 920 F.2d at 159.