DECISION
Appellant Carlo Spirito, Jr. ("Spirito" or "Appellant") appeals from a decision of the Employees' Retirement System of Rhode Island ("ERSRI"), denying Spirito's request to have his retirement benefit recalculated to reflect the pension payment he would have received had he never opted to elect G.L. 1956 § 36-10-10.3, "Social security supplemental option." Spirito argues that ERSRI's decision should be overturned because (1) he detrimentally relied on erroneous advice from a retirement counselor working at the state agency, ERSRI; (2) ERISI is estopped from asserting the strict statutory language of Sec. 36-10-10.3; (3) ERSRI is estopped from relying on the letter regarding Spirito's pension and estimated social security reduction, because Spirito elected the binding social security option before the letter was allegedly sent; and (4) the decision is clearly erroneous, an abuse of discretion, violative of his due process rights, and/or affected by an error of law. In opposition, ERSRI maintains that it based its decision on the evidence presented at the hearing and the clear and unambiguous language of Sec. 36-10-10.3. This Court's jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
Upon attaining the age of 62 and expressing dissatisfaction with his retirement income, Spirito petitioned ERSRI to recalculate his retirement pension, claiming that he relied on erroneous advice from an ERSRI employee when he elected to exercise Sec. 36-10-10.3, "Social security supplemental option" in 1986. On November 29, 1997, ERSRI's Executive Director issued a written decision, denying Appellant's request. (See Letter from Joan E. Flaminio to Charles Hambly dated November 29, 1997.) Spirito timely appealed the decision of the Retirement System. The Retirement System assigned the appeal to a hearing officer, pursuant to Sec. 36-8-3, and the matter was subsequently heard on August 5, 1998.
Before the hearing officer, Appellant testified that he worked for 28 ½ years as a school teacher in Cranston school system. (Tr. at 5.) Appellant maintains that he spoke with the principal of Cranston East High School, Mr. Joseph Ventetuolo, about either retiring or applying for a disability pension due to his hearing problem. (Tr. at 7) The principal, Appellant maintains, advised him to look into a newly enacted law, "Social security supplemental option," under which Appellant could take advantage of an incentive for teachers to retire early. (Id.) Heeding his advice, Appellant claims he went to the pension board in July 1986. (Tr. at 8.) Appellant testified that on August 18, 1986, he spoke with Mr. James Reilly, a retirement counselor with ERSRI, to learn whether he was eligible to retire and what benefits he would receive. (Tr. at 8). Appellant inquired about the newly enacted social security option, Sec. 36-10-10.3. (Tr. at 10.) Before the hearing officer, Appellant summarized what he allegedly learned from Mr. Reilly:
 "[t]hey would give me approximately 4500 dollars or 5000 dollars a year in addition to my regular pension until I turned 62. And when I turned 62, I had to apply for my Social Security benefits, and that whatever amount of money I would receive in Social Security, they would reduce my pension by that amount."
(Id.) Appellant testified that he was informed that by exercising the social security option he would receive approximately $24,000 per year instead of $19,500, until he reached the age of 62, at which point, the State would reduce his pension by the amount of his social security benefit. (Tr. at 11.) Appellant maintains that he questioned Mr. Reilly as to how much he would be receiving in social security payments. (Tr. at 10.) According to Appellant, Mr. Reilly left the room, returned in five minutes, and informed Appellant that he would receive between $600 and $650 per month in social security payments. (Id.)
Appellant testified that he informed Mr. Reilly that his main concern was that he would be "out many dollars" in his payments upon reaching the age of 62, to which, Appellant maintains, Mr. Reilly replied that the difference between the payments before and after the age of 62 would be "within dollars" and "it will be a wash." (Id.) At that point, Appellant decided to select the social security option on his retirement application. (Tr. at 11; Pl.'s Application for Retirement dated August 18, 1986.) Appellant retired in September 1986 and has received his monthly retirement pension ever since. (Tr. at 21.)
Appellant testified that as he neared the age of 62, he went to the Social Security Office to learn more about his retirement benefits. (Tr. at 17, 19.) Appellant claims that he was "shocked" to learn that he would be receiving only $151 per month in social security benefits "after all those years I worked," and especially after Mr. Reilly had estimated his benefits to be approximately $600 to $650 per month. (Tr. at 19.) Appellant maintains that he was relieved, however, because he was under the impression that his pension would stay about the same minus the $151 per month after he reached the age of 62. (Tr. at 20.)
Appellant reached the age of 62 in October 1993. (Tr. at 13.) Once Appellant received his first social security check and subsequent pension payment, however, Appellant explained that he was upset because he expected his pension to be reduced by his actual not estimated monthly social security benefit. (Tr. at 12.) Some seven years after their initial meeting, Appellant telephoned Mr. Reilly to ask "what did you do to me?" (Id.) Appellant testified that he told Mr. Reilly that he believed his pension would be reduced by the amount of his Social Security check, which was $151 per month; whereas, his pension was reduced by $705 per month. (Id.) Appellant testified that Mr. Reilly's only reply was "what am I supposed to be a mind reader," which infuriated Appellant even more. (Id.)
On February 4, 1987, several months after Appellant filed his application for retirement, ERSRI alleges that it sent Appellant a copy of his pension record. (Tr. at 13.) The record explicitly stated that Appellant's pension would be reduced by $8500 per year once he attained the age of 62. (Id.) Appellant adamantly maintains that he did not receive the letter; furthermore, he claims that he did not see his pension record until November or December of 1993, after he had specifically requested it from ERSRI. (Tr. at 14.) Moreover, Appellant argued that if he had seen his pension record when it was allegedly sent, he would have taken action sooner to redress the ambiguity in his retirement pension plan. (Id.)
Annually, Appellant's pension was reduced by $8500, whereas, Appellant's annual Social Security benefit was only $1800. (Id.) Appellant contends that his pension was reduced by $6700 per year more than he was led to believe by the retirement counselor. (Tr. at 15.) Overall, Spirito testified that the benefit he received from 1986 to 1993 by exercising the social security option totaled $30,000 to $ 31,000; however, the amount that his pension was reduced from 1993 through the time of the hearing in 1998 totaled $40,000 to $41,000, resulting in a loss of approximately $10,000 in just five years. (Tr. at 23.) In consideration of Appellant's losses, Appellant asked the Board to recalculate his pension from the present day forward, to reflect what Appellant's pension payments would be if he never elected to exercise the social security option. (Tr. at 25.)
Under cross-examination from counsel for the agency, however, Appellant admitted that he agreed to accept a reduced benefit after the age of 62. With respect to appellant's application for retirement, Appellant admitted that he signed his name to the following statement: "I hereby elect to take my service retirement allowance benefit under the Social Security Option Plan and receive a greater benefit now and a reduced benefit at age 62." (Tr. at 46.) Also under cross-examination, Appellant admitted that he knew that once he selected the social security option, his choice was irrevocable. (Tr. at 66.) At the same time, Appellant admitted that he never read § 36-10-10.3, "Social security supplemental option" before electing to exercise this option. (Tr. at 35.) Additionally, Appellant retracted his statement that he was "shocked" to learn how little he would receive in social security payments "after all those years [he] worked," because he admitted to knowing that Cranston school teachers do not contribute to Social Security, and teaching was, after all, his primary source of income. (Tr. at 19, 28-29.)
Appellant stated that Mr. Reilly never informed him that his pension would be reduced by his estimated social security benefit. (Tr. at 36.) Furthermore, Appellant claimed that he believed Mr. Reilly specifically calculated his future social security benefit when he left the room and returned five minutes later with an estimate of $600 to $650 per month. (Tr. at 10, 37.) Counsel for the State impeached Appellant, however, when the Appellant was asked how Mr. Reilly was expected to determine the amount of social security benefits he would receive in seven years if he did not know whether Appellant would be employed during that time. (Tr. at 36-38.) Appellant admitted that Mr. Reilly neither reduced the $600 to $650 estimate to writing for Appellant, nor told him how he reached the calculation. (Tr. at 43.) With respect to Mr. Reilly's advice, Appellant testified that he "never even questioned it." (Tr. at 10.)
In a written decision dated February 24, 1999, the hearing officer denied Appellant's request to reverse the decision of the Employees' Retirement System of Rhode Island. (Agency Decision). The hearing officer framed the issue as "[d]id the Employee's Retirement System of Rhode Island err in interpreting RIGL 36-10-10.3 as it relates to the reduction of the Appellant's service retirement allowance at age sixty-two (62)?" (Id. at 3.) Upon analyzing the relevant statute, the hearing officer determined that the statute was clear and unambiguous. R.I.G.L. § 36-10-10.3 (1986), "Social security settlement option" states in part:
 "In lieu of the lifetime service retirement allowance, a vested member who retires in accordance with 36-10-9 (b) may choose an optional form of retirement benefit known as the Social Security Supplemental Option.
 This option provides for the payment of a larger benefit before the attainment of age 62, and a reduced amount thereafter. The reduced amount shall be equal to the benefit before age 62, including cost of living increases, minus the member's estimated Social Security benefit payable at age 62. Under this option the benefits payable before and after the attainment of age 62 will be actuarially determined to be equivalent to the lifetime service retirement allowance as determined in 36-10-10."
The hearing officer found that the statute explicitly stated that the reduction at age 62 would be based on the retiree's estimated instead of actual social security benefits and that the estimated benefits will be actuarially determined.
The hearing officer found as fact that Appellant knew by electing the social security option that (1) his benefits would be reduced at age 62, and (2) that the option, once exercised, is irrevocable. Moreover, the hearing officer noted that Appellant insists that he relied on Mr. Reilly's estimation of his social security benefits, although "he did not provide Mr. Reilly with any information relative to his social security pension." (Id.) Finally, ERSRI has on file the official pension record which was sent to Appellant on February 4, 1987, which states that Appellant's pension would be reduced by his estimated social security payments, or $8,500 per year. (Id. at 5.) Thus, to allow Appellant the relief he requests, the hearing officer held would be to "contravene the clear, unambiguous language of the statute and unjustly enrich the Appellant." (Id.) For these reasons, the hearing officer affirmed the decision of the Employees' Retirement System of Rhode Island and denied Appellant's request. (Id. )
On June 18, 1999, Spirito filed a timely appeal to the Superior Court.[1] On appeal, Spirito argues that the doctrine of equitable estoppel applies against ERSRI because Spirito detrimentally relied on the advice given by ERSRI's employee, Mr. James Reilly, who had the actual authority to render advice regarding retirement plans. (Pl.'s Mem. In Support, March 30, 2006.)
In response, ERSRI argues that equitable estoppel does not apply against a government entity when the alleged representations are in conflict with applicable law and/or are ultra vires. (Def.'s Mem. In Opp., July 28, 2006.) Rather, ER SRI maintains that the clear and unambiguous meaning of § 36-10-10.3 controls, and requests that this Court affirm its decision and the appeal thereof. (Id.)
 II Analysis A Standard of Review
A Superior Court's review of a decision of the Retirement Board is governed by the Administrative Procedures Act, G.L. 1956 § § 42-35-1 et seq. The applicable standard of review is codified, as follows:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Section 42-35-15.
When acting pursuant to Sec. 42-35-15, the Superior Court sits as an appellate court. Mine Safety Appliances Co. v. Berry, 620 A.2d 1255,1259 (R.I. 1993). The Superior Court is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."JohnstonAmbulatory Surgical Assoc., Ltd. v. Nolan, 755 A.2d 799, 805
(R.I. 2000) (quoting Barrington Sch. Comm. v. Rhode Island State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992)); see also R.I. Gen. Laws § 42-35-15(e). If the agency decision is based on competent evidence in the record, the reviewing court must affirm the agency's decision.Nolan, 755 A.2d at 805 (citing Barrington Sch., 608 A.2d at 1138).
The agency in this case utilizes a two-tier review process, in which grievances are heard first by a hearing officer, who issues a written decision that is submitted to the Retirement Board. The Board considers the decision, along with any further briefs or arguments, and renders its own decision. ERSRI Reg. § 10.00(a). This two-step procedure has been likened to a funnel. Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-08 (R.I. 1993). The hearing officer, at the first level of review, "sits as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues. Id. The Retirement Board, stationed at the "discharge end" of the funnel, the second level of review, does not receive the information considered by the hearing officer first hand.Id. The Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong." Id. at 206.
"Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation [or, by analogy, an agency rule adopted pursuant to an enabling statute] is a question of law to which [the courts] apply de novo review." Rossi v.Employees' Retirement System of the State of Rhode Island, 895 A.2d 106,110 (R.I. 2006) (citing In re Advisory Opinion to the Governor,732 A.2d 55, 60 (R.I. 1999); City of East Providence v. Public UtilitiesCommission, 566 A.2d 1305, 1307 (R.I. 1989)). The courts must "give deference to an agency's interpretation of an ambiguous statute [or rule] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v. Rhode Island Dep't of Labor and Training Bd. ofReview, 822 A.2d 164, 169 (R.I. 2003) (citing In re Lallo, 768 A.2d 921,926 (R.I. 2001)); see also Lyman v. Employees' Retirement System of theState of Rhode Island, 693 A.2d 1030, 1031 (R.I. 1997). As such, the courts remain the final arbiters of questions of construction of statutes or agency rules. Rossi, 895 A.2d at 113.
 B Statutory Interpretation
Our Supreme Court firmly established that "[w]hen presented with a clear and unambiguous enactment, there is no room for statutory construction, and the statute will be literally applied, attributing the plain and ordinary meaning to its words." Ret. Bd. of the Emples. Ret.Sys. of R.I. v. DiPrete, 845 A.2d 270, 279 (R.I. 2004); Henderson v.Henderson, 818 A.2d 669, 673 (R.I. 2003); State v. Bryant, 670 A.2d 776,779 (R.I. 1996); In re Denisewich, 643 A.2d 1194, 1197 (R.I. 1994). Although the Superior Court — acting as an appellate court with respect to an agency appeal — has the authority to review questions of law de novo (see Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 16 (R.I. 1977)), the Court notes that "it is also a well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency." Pawtucket PowerAssociates Ltd. Partnership v. City of Pawtucket, 622 A.2d 452, 456-457
(R.I. 1993). The Rhode Island General Assembly has entrusted ERSRI with the operation and administration of the state retirement system pursuant to § 38-6-3. See Perrotti v. Solomon, 657 A.2d 1045, 1048 (R.I. 1995).
In order to perform judicial review, the Court must review the administrative agency's findings of fact and conclusions of law.See East Greenwich Yacht Club v. Coastal Resources Mgmt. Council,118 R.I. 559, 376 A.2d 682 (1977); Hooper v. Goldstein, 104 R.I. 32,241 A.2d 809 (1968). In this instance, the agency's decision thoroughly states the facts and law upon which it is founded. Significantly, the Hearing Officer and the Retirement Board found the meaning of Section36-10-10.3, "Social security settlement option" clear and unambiguous. With respect to the amount of social security benefits, ERSRI found the statute to explicitly denote that the reduction is based on estimated, and not actual social security benefits. The relevant section states:
 "(a) This option provides for the payment of a larger benefit before the attainment of age sixty-two (62) and a reduced amount thereafter. The reduced amount shall be equal to the benefit before age sixty-two (62), including cost of living increases, minus the member's estimated social security benefit payable at age sixty-two (62). Under this option the benefits payable before and after the attainment of age sixty-two (62) will be actuarially determined to be equivalent to the lifetime service retirement allowance as determined in 36-10-10." (emphasis added).
ERSRI's interpretation of the statute as allowing only an estimated and not actual social security benefit computation is consistent with the text of the statute and logic. The statute twice mentions that the pension payment will not be reduced by the retiree's actual social security benefit. For instance, it states "minus the member's estimated social security benefits payable at age sixty-two (62), which is then followed by the statement, "benefits payable before and after the attainment of age sixty-two (62) will be actuarially determined." Similar to insurance premiums, the estimated social security benefit was determined on an actuarial basis, i.e., a statistical calculation.See BLACK'S LAW DICTIONARY 37 (7th ed. 1999) (actuary, n. A statistician who determines the present effects of future contingent events.). The retirement counselor relied on a chart to determine Sprito's estimated social security benefit, which stated that a person turning 62 years old in the year 1993 had an estimated social security benefit of $8500 per year. Furthermore, the retirement counselor did not and could not accurately determine Spirito's social security benefit seven years in advance, without any information relevant to Appellant's past social security payments, and without any knowledge of what Appellant could contribute to social security over those seven years. The statutory language of Section 36-10-10.3 (c) is straightforward. Therefore, Appellant could not be misled by the statutory language of Sec. 36-10-10.3, if, in fact, Appellant had taken the time to read it before electing the social security settlement plan for his retirement option.
It is true that the statute was passed in the same year in which Appellant filed his application for retirement; however, contrary to Appellant's assertion that knowledge of the statute was not disseminated by that time; it is more probable than not that the statute — which provides an early retirement incentive for teachers — was widely discussed in Appellant's circles, as Appellant himself admitted to hearing about it first from his friend and principal. (Tr. at 7.) Furthermore, Appellant's argument — that he was not aware that the social security settlement option was revocable, because there is no language to the contrary on the application for retirement — was waived during cross-examination:
 Mr. Barricelli: Did he indicate to you that if you chose that option that that is an irrevocable option in the pension system, and that you would never be able to change that option?
 Carlo Spirito: I was aware of once you chose some option in the Retirement System, you were bound by it.
 (Tr. at 64.) . . .
 Mr. Barricelli: Were you aware that the Social Security Option was irrevocable?
 Carlo Spirito: Yes.
(Tr. at 66.) Therefore, Appellant's argument is without merit. Accordingly, as the statutory language of Sec. 36-10-10.3 is clear and unambiguous, the Hearing Officer's interpretation of the statute is not affected by error of law.
 C The Doctrine of Equitable Estoppel
Appellant maintains that ERSRI should be estopped from denying liability because Appellant detrimentally relied on advice by an ERSRI employee that his social security payments would average $600 to $650 per month and that his pension payments upon attaining the age of 62 would be "within dollars" to the payments he received in the preceding years.[2] The Retirement Board asserts that any representations made by the retirement counselor are not binding on ERSRI.
The doctrine of equitable estoppel applies to prevent "a party from asserting a legal claim or defense which is contrary or inconsistent with his prior action or conduct." 28 AM. JUR. 2D Estoppel andWaiver § 28 (2000). A survey of Rhode Island case law reveals that equitable estoppel may apply against public agencies "to prevent injustice and fraud when the agency or its officers make representations that cause a person to act or refrain from acting in a particular manner to his or her detriment." Caron v. Town of N. Smithfield, 885 A.2d 1163,1165 (R.I. 2005); see also Romano v. The Retirement Board of theEmployee's Retirement System of the State of Rhode Island, 767 A.2d 35
(R.I. 2001); Greenwich Bay Yacht Basin Assocs. v. Brown, 537 A.2d 988,991 (R.I. 1988) (". . . [T]he doctrine of equitable estoppel . . . may be applied to a governmental authority as well as a private party when appropriate circumstances and principles of equity so require.")
However, this rule is further qualified to limit the applicability of estoppel to situations in which the agent has the actual authority to bind the agency: "neither a government entity nor any of its representatives has any implied or actual authority to modify, waive, or ignore applicable state law that conflicts with its actions or representations." Id. at 39 (quoting in part Ferelli v. Dep't ofEmployment Security, 106 R.I. 588, 593-594, 261 A.2d 906, 909-910
(1970); see also School Committee of Providence v. Board of Regents forEducation, 429 A.2d 1297, 1302 (R.I. 1981) ("[I]t is well settled that the authority of a public agent to bind a municipality must be actual."); Casa DiMario, Inc. v. Richardson, 763 A.2d 607, 611 (R.I.2000) ("Appellant's professed reliance upon private discussions with and alleged statements by individual members of the council, the town clerk, and/or the solicitor . . . [was] misplaced and unjustified. Communications, representations, and alleged acts of this kind are insufficient as a matter of law to bind a municipality to future acts or inaction.")
In Romano v. Retirement Board of the Employee's Retirement System ofthe State of Rhode Island, 767 A.2d 35 (R.I. 2001), Appellant argued that he detrimentally relied on representations made by an ERSRI retirement counselor. Romano sought advice from the counselor to determine whether he could retire from his employment with the Rhode Island Department of Transportation ("DOT"), accept another municipal position, and still collect his retirement benefits without any repercussions. Romano alleged that the counselor told him that she was unaware of any restrictions which would prevent him from working for a municipality while receiving state retirement benefits, but warned him to go to the Retirement Board to seek further advice. Id. at 36. Thereafter, Romano's employer, on his behalf, sent a letter to the ERSRI's Executive Director to seek clarification. The Executive Director sent a letter to Romano's employer stating in general terms that "there is no prohibition against a state retiree working for and belonging to a municipal system." Id. However, the letter neither referenced Romano's situation nor gave any details, simply stating "[i]f further clarification is needed please let me know." Id. Without seeking an advisory opinion from the Retirement Board, Romano went ahead and retired from DOT and accepted employment in the Town of Bristol.
Romano did, in fact, face consequences for his decision to continue employment with a municipality. ERSRI informed him that in accordance with Sec. 36-10-36, he must limit his municipal employment to seventy-five (75) days per year or risk suspension of his pension benefits. Romano appealed, arguing that he detrimentally relied on the advice from ERSRI employees when he accepted employment with the municipality. The Board opined and the appeals thereafter affirmed, that "where there is a clear statutory mandate, [the board] must comply with [it] . . . no governmental official can in fact waive that mandate."Id. at 37.
The Supreme Court upheld the agency's decision, finding "the doctrine of equitable estoppel should not be applied against a governmental entity like the board when, as here, the alleged representations or conduct relied upon were ultra vires or in conflict with applicable law." 767 A.2d 35, 38; see also State v. Rhode Island Alliance of SocialServices Employees, Local 580, SEIU, 747 A.2d 465, 469 (R.I. 2000). Specifically, the Court held that neither the retirement counselor nor the Board's Executive Director possessed any "actual or apparent authority to vary or contradict" statutory law. Id. at 39.
Here, too, Appellant relied on the advice of ERSRI employees instead of referring to the statute. Arguably, the Appellant in Romano went further, however, and sought advice from both a retirement counselor, and from the Executive Director of the agency, who sent him misleading advice in a letter. Romano, 767 A.2d at 36. Reliance on representations made by an agent of the ERSRI is simply not enough, especially when both parties had the opportunity to rectify their misunderstandings. Seegenerally 28 AM. JUR. 2D Estoppel and Waiver § 155 (2000). Appellant voluntarily chose to exercise this option; for better or worse, he must endure the consequences of his choice.
A Pennsylvania court affirmed this notion in a similar case, whereby Appellant was misled by employees of the state's public school teacher retirement board and induced to take early retirement to her detriment.Finnegan v. Commonwealth of Pennsylvania, 126 Pa. Commw. 584 (1989) In affirming the Board's decision to de ny her relief, the Commonwealth Court of Pennsylvania held that equitable estoppel did not apply, because Appellant failed to satisfy the statutory requirements in order to receive the benefits she sought. Id. at 587-588, 590. The Court expressed regret with the outcome, but aptly noted that "[t]o decide otherwise would be tantamount to giving employee errors the effect of amending the substance of a statute." Id. at 590. The same holds true here.
The hearing officer was not swayed by Appellant's argument that the retirement counselor told him that his actual social security payment amount would be deducted from his pension. (Agency Decision 4.) The hearing officer noted that Spirito revealed in his testimony that he failed to provide the retirement counselor with any information regarding his social security payments, upon which, the counselor could reasonably estimate Spirito's future benefits. (Agency Decision 4.) In fact, Spirito acknowledged that he did not pay social security in his principal occupation as a teacher in the Cranston school system. Additionally, the hearing officer did not accept Appellant's testimony that he never received a copy of his pension record in 1987: "despite the Appellant's testimony that he was not aware until 1993 that his pension benefit would be reduced by $8,500.00, the official pension record addressed to the Appellant . . . is dated February 4, 1987 and indicates the amount of reduction at age sixty-two (62) as $8,500.00." (Agency Decision at 4-5.) Therefore, the hearing officer concluded that Appellant had no basis for detrimental reliance.
On appeal, Appellant contends that the hearing officer erroneously relied on the February 4, 1986 letter detailing Appellant's pension record in making her decision. The Court acknowledges that a letter containing pertinent information regarding Appellant's pension, but sent months after Appellant's decided to elect the social security option is not helpful, unless, of course, the letter was sent in confirmation of Appellant's decision, and he was entitled to confirm or deny his retirement plan at that point. Both parties acknowledge that the option once selected is binding. However, although the hearing officer did make note of the letter in her finding of facts, the hearing officer ultimately based her decision on the clear and unambiguous language of § 36-10-10.3. See Agency Decision at 4. Therefore, the hearing officer's decision was not an abuse of discretion, affected by error of law, or clearly erroneous.
This Court need not address the other elements of equitable estoppel. To the extent that the retirement counselor led Appellant to believe that his actual and not estimated social security payment would be deducted, the retirement counselor was acting ultra vires and lacked the actual authority to bind the agency to advice contrary to the unequivocal statutory mandate. Romano, 767 A.2d at 40. Pursuant toRomano, the Board cannot be estopped from asserting a statutory provision. Id. at 38. Accordingly, the Retirement Board's decision was not in excess of its statutory authority.
 Conclusion
After reviewing the whole record, this Court finds that the ERSRI's decision was not clearly erroneous in view of the reliable, probative, and substantial evidence. Furthermore, the Court finds that the decision was not rendered in violation of constitutional or statutory provisions and was not an abuse of discretion. Substantial rights of the plaintiff have not been prejudiced. Accordingly, ERSRI's decision, denying Appellant's request to recalculate his retirement pension without the social security settlement option is affirmed. Counsel shall present an appropriate Order consistent with this Decision.
[1] It should be noted that although the petitioner filed this action in the Superior Court on June 18, 1999, the matter was not assigned by his counsel to the appropriate calendar until November 16, 2006 after the submission of memoranda of law by counsel. The matter was then referred to this justice for decision on November 30, 2006.
[2] Appellant asserts that his conversations with the retirement counselor are admissible evidence against ERSRI pursuant to Rhode Island Rule of Evidence 801(d)(2)(d); wherefore, a party can introduce "a statement by the party's agent or servant concerning a matter within the scope of the party's agency or employment, made during the existence of the relationship." This Court need not address the applicability of this rule, because the record reflects that the hearing officer allowed Spirito to testify regarding his conversations with Mr. Reilly, and allowed opposing counsel to conduct cross-examination in order to glean a more accurate account of events. As a rule, hearsay evidence is admissible in administrative proceedings "when necessary to obtain facts not reasonably susceptible of proof under [the rules of evidence]." R.I.G.L. § 42-35-10(a); see also DePasquale v. Harrington, 599 A.2d 314
(R.I. 1991). Therefore, this Court will analyze the record before it in order to address Appellant's claim of equitable estoppel.